# CHARLESTON.

WAGGONER v. WOLF et al.

Submitted September 9, 1886.—Decided November 20, 1886.

28 820
34 603
28 820
40 572
28 820
44 510
28 820
48 200
28 820
54 144
28 820
f62 110
28 820
65 68
65 142

1. Where a deed made under a decree by a commissioner or other authority is offered in evidence as a connecting link of the party's chain of title to land, it is necessary to introduce with it so much of the record of the suit, in which such decree was made, as will satisfactorily show, that the persons having the legal title to the land conveyed were parties to the suit, and as will identify the land.  (p. 826.)

2. Where two suits are heard together, and it appears from the orders and decrees entered therein, that the proper parties were before the court either in one or both of the suits, and it is proven, that the file of papers in one of the suits is lost, such orders and decrees may be read in evidence, although it does not appear from the bill in the other suit, that all such persons were parties to it.  (p. 826.)

3. The fourteenth section of ch. 95 Acts of 1882 authorizing the former owner of land, the title of which has been forfeited to and remains in the State, to redeem such land at any time before sale by the commissioner of school-lands in the manner prescribed by said act, is valid and constitutional.  (p 828.)

4. In an action of ejectment the plaintiff offered in evidence a deed made by a commissioner in pursuance of a decree entered in a suit brought for the specific execution of a written contract for the sale of the land so conveyed, and such portions of the record, as show the authority of the commissioner to make such deed, including the said written contract, HELD :

It is not necessary in such action of ejectment to prove the execution of such contract by the vendor of the land.  (p. 830.)

*R. S. Blair* for plaintiff in error.

*R. H. Freer* and *P. W. Morris* for defendant in error.

SNYDER, JUDGE :

Ejectment brought April 29, 1885, in the circuit court of Ritchie county by Philip Waggoner against Smith J. Dailey and Mary his wife, to recover the possession of 250 acres of land lying on the waters of Long Run in said county, to which the plaintiff claims title in fee. On motion of Jacob

Wolf, the vendor of Dailey and wife he was by order of the court also made a defendant in the action. The defendants pleaded "not guilty," the case was tried by jury and a verdict found for the plaintiff upon which the court, on March 12, 1886, entered judgment for said 250 acres of land. During the trial the defendants took several bills of exceptions, and before judgment they moved the court to set aside the verdict and grant them a new trial, which motion being overruled by the court the defendants excepted and at their instance the court certified all the evidence introduced on the trial. The defendant, Wolf, obtained this writ of error.

The record shows, that on February 2, 1852, Jacob H. Smith obtained a grant from the commonwealth of Virginia for 1990 acres of land; after the entry of this land and before the date of the grant, the said Smith made a written contract, dated October 25, 1851, by which, after reciting that P. Cox, jr., himself, T. Stinchcomb and Abel Sinnett had jointly entered said land, the said Smith bound himself, so soon as the grant therefor should be issued to him, to convey 500 acres of said land to P. Cox, jr.; by an endorsement on this contract, dated February 28, 1853, said Cox assigned the benefit thereof to Mary C. Snodgrass and Elizabeth A. Cox; and they with their husbands by another endorsement, dated October 9, 1865, assigned the one undivided half of their claim in said land to Abel Sinnett, who by a further endorsement thereon, dated June 21, 1872, assigned all of his claim and interest to E. L. Snodgrass and wife. Smith having died, two suits were brought in the circuit court of Ritchie county in the year 1873, the one by E. L. Snodgrass and Mary C., his wife, against P. Cox, jr. and others, and the other by D. R. Neal against the "heirs of Jacob Smith." These two causes were heard together, and at the April term 1873, a decree was entered therein appointing commissioners to lay off and divide the said 1,990 acres of land, of which Jacob H. Smith died seized, among the parties entitled thereto, with special directions to assign to the plaintiffs, E. L. Snodgrass and wife, one half of the aforesaid 500 acres and the other half to Anthony Waggoner and wife. The commissioners made the partition as directed, and reported the same to court; and by decree of October 20, 1873, the said report and partition

were confirmed and R. S. Blair appointed commissioner to convey to the parties the lands so assigned and confirmed to them, respectively, in severalty. In pursuance of said decree R. S. Blair, commissioner, by deed dated December 27, 1873, conveyed to Elizabeth Waggoner (formerly Cox), the wife of Anthony Waggoner, the 250 acres assigned to her and her husband as aforesaid; and the said Elizabeth Waggoner and her husband, by deed dated January 8, 1883, conveyed this 250 acres of land to Philip C. Waggoner, the plaintiff in this action. The foregoing constitutes the documentary title under which the plaintiff claims the land in controversy.

It also appears, that a tract of 1600 acres of land, lying on the waters of Indian Creek in Ritchie county, entered on the land book in the name of Jacob Smith's estate, became delinquent for the non-payment of the taxes due thereon for the years 1865 and 1866, that the same was sold by the sheriff in July 1867 for said taxes and purchased by the defendant, Jacob Wolf, and that by deed, dated December 27, 1869, the recorder of said county conveyed said land to Wolf as such purchaser. By a subsequent deed dated October 19, 1876, after reciting that the heirs of Jacob .H. Smith, deceased, had redeemed the same, said Wolf released to said heirs all his title and right to the aforesaid land which had been conveyed to him by said tax-deed. Afterwards by deed, dated December 28, 1877, the said Smith heirs conveyed 1290 acres of said land to said Wolf and John A. Hutchinson without warranty. E. G. Day, commissioner, by deed dated April 28, 1865, conveyed to Jacob Wolf 300 acres of land lying on Plumb Run, a branch of Indian Creek. This deed recites that said conveyance is made by virtue of a decree of the circuit court of Ritchie county made at the March term 1865, in the cause of Jacob Wolf against Jacob H. Smith's heirs. These several deeds constitute the documentary title under which the defendants claim the land in controversy.

The defendants introduced in evidence the record of delinquent lands, from which it appeared that the 250 acres in dispute charged in the name of Elizabeth Waggoner had been returned delinquent for the years 1877 to 1880 inclusive, and had been sold by the sheriff in 1879 to the State for

the taxes of 1877 and 1878, and also in 1881 for the taxes of 1879 and 1880.    By way of rebuttal the plaintiff introduced the petition of said Elizabeth Waggoner for the redemption of said land, the report of the commissioner of school-lands, and a decree entered February 27, 1885, reciting, that the said Elizabeth Waggoner had "paid to the commissioner of school-lands all the taxes and interest due on said land from the year 1877 to January 1, 1885, amounting to $174.22," and the decree then proceeds, "it is therefore ordered and decreed that the tract of 250 acres of land be released from all claims and demands whatsoever that the State of West Virginia may have had by reason of the forfeiture for the non-payment of taxes and non-entry on the land-books of Ritchie county under the said Elizabeth Waggoner, or those claiming under her, and the said land is hereby redeemed from all claims of the State," &c.

The plaintiff introduced, as a witness for him, one Thomas Hill, who testified that the land in controversy was the one half of the 500 acres mentioned in the written contract between Jacob H. Smith and P. Cox, Jr. dated October 25, 1851, which is a part of the 1990 granted to said Smith ; that the defendants, Daily and wife, were in possession of said land at the time this action was commenced, and that he put them in possession in 1875 and they thereafter were in possession under him.    The plaintiff also introduced W. A. Strickler, the clerk of the circuit court of Ritchie county who testified, that he had made a thorough examination of the files of his office and was unable to find the papers in the case of *D. R. Neal* v. *Jacob H. Smith's heirs.*

The defendant, Wolf, on his own behalf, testified that he took possession of the 1,990 acre tract, of which the land in controversy is a part, in 1869, and sixty acres of said 250 acres are cleared, and continued in possession until the present time, except about two years, to-wit, from 1876 to 1878, and that during those two years he *considered* he held possession for the heirs of Jacob H. Smith, deceased ; and that the defendants, Dailey, were his vendees.    But upon being shown the plat filed in the suit of *E. L. Snodgrass and wife* v. *P. Cox and others*, the witness stated, that the 300 acres conveyed to him by E. G. Day, commissioner, covered no part

of the land in controversy. The foregoing embraces the substance of all the material evidence introduced by either party on the trial of this action.

1. The first assignment of error is, that the Court erred in permitting the plaintiff to read to the jury, against the objection of the defendants, the bill and decrees in the suit of *E. L. Snodgrass and wife* v. *P. Cox, Jr., and others.* The bill produced does not make the heirs of Jacob H. Smith parties; but the decrees entered in the cause show that this cause and that of *D. R. Neal* v. *The Heirs of Jacob H. Smith* were heard together. The file of papers in the latter cause, it was proved by the clerk of the court, could not be found, but the recitals in the report of the commissioners making the partition and the orders and decrees offered in evidence show not only that the land was divided among said heirs, but it fully identifies the land and from the recitals it is apparent that Smith's heirs were parties to the suit. The deed made by Blair, commissioner, to Elizabeth Waggoner and her husband, under the decree in said suits, for the land now in controversy, states that Smith's heirs were parties to the suit and gives the names of them as the parties whose title and interest in the land is conveyed. Where two suits are heard together, it is sufficient, generally, if the proper parties are made to either suit, and it is not indispensable that all of them should be parties to each suit. *National Bank* v. *Bates*, 20 W. Va. 210.

In *Wynn* v. *Harman*, 5 Gratt. 157, it was held, that a decree and deed made in pursuance thereof might be offered in evidence, without the production of the whole record, the decree sufficiently describing the land which the commissioner was directed to convey. It is true, as a general rule, that a party desiring to avail himself of record-evidence, must produce all of the record relating to the subject-matter, but this is not true in all cases. As when the question is simply whether a particular decree has been rendered. In such case, the exhibition of the decree alone is all the law requires. *White* v. *Clay*, 7 Leigh 68.

Where a deed is made by a commissioner or other authority, the decree conferring or attempting to confer such authority is always legitimate and proper evidence, because

where title is claimed or derived under a decree it is necessary to establish the existence of the decree in order to show the validity of the deed. But the legal effect of such decree must generally depend upon other facts. The most important of which is, when it is introduced as a link in the chain of the party's title, that it was made in a suit in which the land is described and to which the persons whose title it transfers or devests were parties. *Baylor* v. *Dejarnette*, 13 Gratt. 152, 163; *Smith* v. *Chapman*, 10 Gratt. 445; *Cales* v. *Miller*, 8 Gratt. 6.

Considering the facts appearing upon the face of the report and decrees as well as the commissioner's deed introduced in evidence in this case, in connection with the proof of the loss of the file of papers in the suit of *D. R. Neal* v. *Smith's heirs*, it seems to me a *prima facie* case is made that Smith's heirs, in whom the legal title to the 1990 acres of land was vested, were parties to said suit, and that said portions of the record were properly admitted as evidence. The said decrees and deed were certainly admissible as color of title.

2. The second assignment of error is, that the court improperly overruled the defendant's objections to the introduction of the record of the proceedings and decree of the circuit court of Ritchie county, showing that Elizabeth Waggoner had redeemed the 250 acres of land in controversy, and that the forfeiture thereof to the State had been released. This assignment is based on two grounds: *First*, that the said Elizabeth Waggoner had no such relation to or interest in the land as entitled her to redeem it; and *second*, that the statute authorizing such redemption was unconstitutional and void.

*First.*—The facts before stated show that in January, 1883, Elizabeth Waggoner and her husband conveyed this land to the plaintiff, by deed with general warranty of title, and that the same had become forfeited to the State before the date of said deed. The statute provides, that any *former owner* or creditor having a lien on the land may redeem the same. Section 14, ch. 105, Amended Code p. 655. Elizabeth Waggoner had been the owner at the time of the forfeiture and was therefore the former owner contemplated by the statute at the time she filed her petition for redemption. The abso-

lute title being in the State at the time she made the deed to
the plaintiff, no title then passed by that deed.   But it being
a deed with *general warranty*, as soon as she became re-
invested with the title by the redemption, that title would at
once be transferred to and vested in her grantee, the plain-
tiff, under the well settled rule, that when a party has made
a warranty deed before he has acquired title to the land, his
subsequent acquisition of the title will inure to the benefit of
his grantee in whom the title will become vested by estoppel.
Big. on Estop. 294.   It is therefore apparent, that Elizabeth
Waggoner did have the right to redeem said land, if any one
had.

*Second.*—But it is insisted that the statute authorizing the
redemption is unconstitutional.   The statute in force in Feb-
ruary, 1885, the time the decree of redemption was entered,
by its express terms authorized the proceedings and decree
made in regard to said land.   It declares that the former
owner may redeem, at any time during the pending of pro-
ceedings for the sale of the land by the school commissioner
and before the sale.   Sec. 14, ch. 105, Amd. Code, p. 645.

The only question then is whether said statute is constitu-
tional ?  The 3d sec. of Art. XIII. of the Constitution declares
in substance, that the title to all lands heretofore or hereafter
forfeited to the State and not redeemed, released or otherwise
disposed of, shall, *ipso facto*, be transferred to and become
vested in one of the three classes of persons, if there are any
such :   *First.*—Any person who shall have had actual con-
tinuous possession thereof under color or claim of title for
ten years and paid the State taxes thereon for any five years
during such possession;   *Second.*—If there be none such,
then, any person who shall have title thereto regularly de-
rived from the State which but for the forfeited title would
be valid and who has paid all State taxes on the same for five
successive years after 1865 ;  and   *Third.*—If there be no one
of either of these two classes, then, any person who shall
have had actual continuous possession under color of title
for any five years after 1865 and paid all State taxes thereon
for said period.

The fourth section of the same article provides that the
title to all such forfeited lands, *not redeemed, released, transferred*

or otherwise disposed of, shall remain in the State until by proceedings in the circuit court the same shall be sold to the highest bidder. And the fifth section provides, that the former owner may, after deducting all taxes, &c., have the residue of the proceeds of such sale paid to him.

As there is no evidence tending to prove that any of the defendants or any one else, other than the plaintiff and those under whom he claims, ever paid any taxes on the land in controversy, it is certain that the same was not transferred to the defendants or any other person under the said third section of the Constitution, and that the title to the land still remained in the State at the time the redemption was made or attempted in February, 1885.

In *McClure* v. *Maitland*, 24 W. Va. 561, this Court decided, that as soon as the title to the land became forfeited and vested in the State, according to the aforesaid provisions of the Constitution, the ownership of the State became absolute, and her title perfect, and that the former owner then ceased to have any title, claim, right or interest whatever in the land as such owner, and that the only right conferred upon him by the said fifth section of the Constitution was to be paid the excess of the proceeds of the sale over the amount of the taxes, in the manner therein prescribed. In that case no petition was filed or offer made to redeem the land. The effort there was to have the sale of lands already made set aside at the instance of Maitland, the former owner. Therefore no question was presented or considered in that case as to the right of the former owner to redeem the land before sale by the school commissioner; nor was the power of the legislature to authorize such redemption before sale either referred to or discussed by the court in its opinion. The question as to such authority is now for the first time presented to this Court.

If the constitutional provisions above referred to stood alone, the question now to be determined might be one of difficulty and great nicety. But the subject is much simplified by sec. 39 of Art. VI. of the Constitution, by which it is provided: "The legislature shall not pass local or special laws in any of the following enumerated cases; that is to say, for

Granting divorces;" (Here after enumerating a number classes of cases, it proceeds).

"Authorizing deeds to be made for lands sold for taxes:
Releasing taxes;

*Releasing title to forfeited lands.*

The legislature *shall provide*, by general laws, for the foregoing and all other cases for which provision can be so made," &c.

There is a vast difference between delinquency and forfeiture. The former means simply that the owner has failed to pay the taxes due on his land, and in consequence it has been returned delinquent and is subject to the State's lien for the taxes and liable to be sold therefor. But by forfeiture the former owner is entirely devested of all his interest in the land and the title thereto becomes absolutely vested in the State. By reason of the delinquency the State may sell the land under her lien for taxes, while a forfeiture vests the absolute title in the State.

The provision of the Constitution just quoted expressly authorizes and commands the legislature to "provide by general laws for  *  *  releasing the title to *forfeited lands ;*" that is, the legislature shall provide for releasing the title to lands which have by operation of the Constitution and laws become absolutely vested in the State. No language could have been employed to make the meaning plainer. Nor is there any conflict between this provision and that contained in the fourth section of Article XIII. of the Constitution above referred to, for there it is provided, that only such forfeited lands shall be sold by proceedings in the circuit court as shall not have been "redeemed, *released,* transferred or otherwise disposed of." The power to redeem and *release* the title to lands vested in the State by forfeiture is fully recognized. It therefore seems to me, that sec. 14 of ch. 105 of the Amended Code, which is the same as sec. 14, ch. 95, Acts of 1882; is plainly valid and constitutional. The land in controversy in this case, having, as we have seen, been redeemed or the title of the State thereto released in accordance with the provisions of this statute, the plaintiff's title is unaffected by the forfeiture, and stands precisely as if the title had never vested in the State.

3. The third assignment of error is that the court improperly permitted the contract, dated October 28, 1851, from

Smith to Cox and the endorsements thereon to go to the jury as evidence, without proof of its execution. This contract, as before shown, was specifically executed in the suits of *E. L. Snodgrass and wife* v. *P. Cox and others* and *D. R. Neal* v. *The heirs of Jacob H. Smith, deceased,* to which all the persons who signed and endorsed said contract or their representatives were parties. All of said persons are bound by the decree entered in said suits. Whatever title they or any of them had in the 250 acres in controversy passed by said decrees, and the commissioner's deed made in pursuance thereof, to Elizabeth Waggoner and her husband, the grantors of the plaintiff. This Court must presume that the execution of said contract and endorsements were duly proved in said suits, and it was therefore unnecessary to prove the same in this collateral action.

4. The only other assignment is, that the Court erred in refusing to set aside the verdict and grant the defendants a new trial. We have already shown that the Court committed no error of law during the trial of the case. We have also stated all the evidence introduced on trial, and from that statement it is apparent that the verdict was fully warranted by the evidence. The tax-deed to the plaintiff in error was released by him and he failed to show that the deeds from E. G. Day, commissioner, and from Smith's heirs to him or either of them embraced the land in controversy. But if he had shown this, he would have shown merely color of title without any sufficient adverse possession to warrant the jury in finding that he had acquired title by such possession. On the other hand the plaintiff has shown a complete legal title from the commonwealth to himself, and that he was therefore the owner of the land and entitled to recover the possession thereof. The judgment of the circuit court must be affirmed.

AFFIRMED.