# CHARLESTON.

## McDodrill *et al.* v. Pardee & Curtin Lumber Co.

Submitted January 29, 1895—Decided April 13, 1895.

1, Pleading—Declaration—Description of Premises—Trespass.

In the action of trespass to realty, or an action on the case in

lieu thereof under the statute, the place where the acts complained of were done is material and traversable, and the allegations thereof must in some way, either by the name of the land or close, by some or all of its abuttals, by naming a particular locality, or in some other way, designate or describe such *locus in quo* with a reasonable degree of definiteness; otherwise the declaration will be bad on demurrer.

2. GUARDIAN AND WARD—WARD'S ESTATE.

Not a guardian by nature, but only a guardian appointed, who has given bond as and when required by law, is entitled to the possession, care, and management of his ward's estate.

3. GUARDIAN AND WARD—INFANT.

An infant who has no such guardian who has given bond may, for damage done to his real estate, sue by next friend.

4. EVIDENCE—DEED—PRIVITY OF SUIT.

Where a deed made under a decree by a commissioner or other authority is offered in evidence as a connecting link in the plaintiff's chain of title to land, it is necessary to introduce with it so much of the record of the suit in which such decree was made as will satisfactorily show that the person having the legal title to the land conveyed was a party to the suit, and as will identify the land conveyed with the land decreed.

5. EVIDENCE—DEED—STRANGER TO DEED

As against a party who claims against the deed and is a stranger thereto, the recital of such facts therein, without more, is not evidence thereof, and the deed does not prove the transfer of the title to the land it purports to convey.

6. CO-TENANTS—WASTE.

Cotenants, who commit waste, are liable to each other jointly or severally for the damages; but the amount of a recovery against a stranger or a grantee of a cotenant must be apportioned to correspond with his undivided interest in the land. A case where these principles are applied.

W. E. HAYMOND for plaintiff in error, cited 6 Rand. 556; 16 Mass. 348; 2 Munf. 282, 336, 518-20; 3 Munf. 273; 12 Leigh (old) 91, 204, 227; 76 Va. 169; 4 Min. Inst. pt. 1, 764-70; 13 W. Va. 160; 24 W. Va. 606; 11 W. Va. 17; 14 W. Va. 157.

ALEX. DULIN, of DULIN & HALL. for defendant in error, cited 8 W. Va. 259; 26 W. Va. 48; 12 W. Va. 1; 21 W. Va. 486; 16 W. Va. 777; 1 Add. Torts (Wood's Ed.) §§ 98, 108, 195, 328-30, 362, 421, 447; 1 Washb. Real Prop. (4th Ed.) top pp. 129, 154 2 Min. Inst. (3d Ed.) top pp. 100, 598-601, 620-22, 631; 2 Tucker's Com. top pp. 186, 192, 193; Code, c. 92; Id. c. 103, s. 8; 6 Rand. 556; 6 Gratt. 301; 9 Gratt. 273; 8 W. Va. 282;

Code, c. 82, s. 18; 10 Am. & Eng. Enc. Law 679-81; 2 Add. Torts, § 1296; 1 Min. Inst. (3d Ed.) top p. 516; 1 Bart. Law Prac. 218, 221, 294, 295; 5 Gratt. 157; 8 Gratt. 6; 28 W. Va. 820; Code, c. 92; 31 W Va. 621, 632; 1 Black Judgm. §§ 96-99, 101, 105; 28 W. Va. 584; 76 Va. 493; Hutch. Land Titles § 505; 2 Greenl. Ev. § 307.

HOLT, PRESIDENT:

This was an action of trespass on the case, brought in the Circuit Court of Braxton county, by Charles McDodrill and Martha Couger, an infant, suing by McDodrill as her next friend, against the lumber company, a corporation under the laws of the state of West Virginia, for trespasses committed on a certain tract of land, by cutting down and carrying away various growing trees. There was a demurrer overruled; plea of not guilty; trial by a jury; a verdict for plaintiffs for five hundred dollars damages; motion for a new trial, motion in arrest of judgment, both overruled; judgment for plaintiffs; and this writ of error awarded defendant—with all these rulings and others, excepted to there, and assigned as grounds of error here.

First it is said the court erred in overruling the demurrer entered to the declaration as a whole and to each of the four counts. The first two counts aver a trespass committed by defendant in entering upon the lands and premises of plaintiffs and cutting down and carrying away various trees there found growing, and converting and disposing thereof to its own use. The third count avers a cutting down and destroying the saplings and undergrowth, the denudation of the land of all its valuable timber, to the permanent and lasting injury of the same. The fourth and last count avers that plaintiffs are the owners of and invested with the ownership of the immediate remainder in fee in said tract of land, subject to a certain life estate, and makes the same averments of trespass, whereby plaintiffs have been injured and damnified in their estate in remainder in and to said land and premises.

By section 8 of chapter 103 of the Code it is provided that "in any case in which an action of trespass will lie

there may be maintained an action of trespass on the case."
And chapter 92 provides, "Section 1: If a tenant of land
commit any waste thereon, or after he has aliened it, while
he remains in possession, unless by special permission of the
owner so to do, he shall be liable to any party injured for
damages. Section 2: If a tenant in common, joint tenant,
or parcener commit waste, he shall be liable to his cotenants,
jointly or severally, for damages. Section 3: If a guardian
commit waste of the estate of his ward, he shall be liable
to the ward, at the expiration of his guardianship, for the
damages. Section 4: Any person entitled to damages in
any such case may recover the same in an action on the
case.  *  *  *" And by section 14 of chapter 82 any minor
entitled to sue may do so by his next friend.

The first point made on the demurrer is that the infant
can not sue for such trespass to his lands; it must be brought
by the guardian; and for this is cited *Truss* v. *Old* (1828) 6
Rand (Va.) 556. For a full discussion of the various kinds
of guardians and of the common-law doctrine as modified
by our statutes, see Minor Inst. c. 17, pp. 460, 472, *et seq.* It
was held in the above case that guardians in socage and tes-
tamentary guardians, although they have no beneficial in-
terest, yet have a legal interest, accompanied with the pos-
session of the ward's land during the guardianship. If,
therefore, a person trespass on the lands of an infant, and
cut and carry away his trees, without the license of the
guardian, the ward can not maintain an action of trespass
therefor, but the guardian may; and he must account to the
ward for the damage recovered. And section 7 of chapter
82 of the Code provides that "every guardian who shall be
appointed as aforesaid and give bond as required shall have
the custody of his ward and the possession, care and man-
agement of his estate, real and personal." If there be a
father, he is guardian by nature; if the father be dead, then
the mother succeeds as guardian by nature; and though,
as such, charged with the custody of the child's person,
and, it may be, with his education, they do not have, as such,
the possession or care of his estate. See 1 Minor Inst. p.
472. In such case the doctrine of *Truss* v. *Old*, 6 Rand (Va.)

556, would not apply, for the reason and foundation of the rule do not exist. Nothing on the face of this declaration shows that the infant has any guardian at all; certainly nothing that she has a guardian who is entitled to the possession and care of her estate; and I know of no rule which requires or authorizes such presumption to be made in passing upon a demurrer to her declaration; and section 4 of chapter 92 of the Code (page 706) provides that "any person entitled to damages in such case (that is, a case of waste) may recover the same in an action on the case."

Is this declaration good in other respects on general demurrer? It seems to have been drawn in the ancient mode of declaring in trespass *quare clausum fregit* with the expectation of making a new assignment. This mode had its origin in the practice which had become general of suing out only general *clausum fregits*. As the law was held to be that upon such general writs the plaintiff either could not at all, or could not to any conclusive effect, count of any close in certain, the mode of declaring generally, pleading the common bar (*i. e.* naming any place as the *locus in quo* and setting up the plea of *liberum tenementum*) and making a new assignment seems to have been universally adopted. See *Martin* v. *Kesterton* (1776) 2 W. Bl. 1089; 4 Rob. Prac. 584; *Cooke* v. *Thornton* (1827) 6 Rand. (Va.) 8. But as this practice was circuitous and full of delay, it has been plainly modified, if not done away with, in this state, by section 32 of chapter 125 of the Code.

In such action it is necessary to allege the *locus in quo*, for such fact is plainly traversable; and being necessary to be alleged, it must be given to a reasonable degree of certainty. Here the allegation in the first three counts is that on the —— day of ——, 1890, at the county of Randolph, state of West Virginia, the said defendant, without the consent or approval of plaintiffs, wrongfully and unjustly entered upon the lands and premises of the plaintiffs, to wit, a tract of three hundred and forty four acres, more or less, of land, situated on Elk run, in Randolph county, West Virginia, and wrongfully, *etc.*, cut down, *etc.*, one hundred poplar trees, *etc.* It is not called the close of any one, or designat-

ed as in the occupation of any one, or given any name or designation, nor metes or bounds of any kind, in whole or in part.   Any one or all of these modes of designation would have sufficed, and could have been easily used in this case, as appears in this record, as it appears to be the land conveyed to Lewis Couger, Peter Couger and John Couger by Peter Conrad, by deed dated October 29, 1853, on which Jeremiah Couger then lived.   It was known and called the "Jere Couger Place" or "Jere Couger Land," described as on Elk river at the "mouth of the Valley fork."   It was so described in plaintiff's McDodrill's various deeds.   The reasons are obvious for requiring, in actions in which the *locus in quo* is of their essence, that it should be designated in the declaration by name, by some of the abuttals, or by some other proper description.   And I have not been able to find any modern case under any system of pleading anywhere, or any form given, or any book treating of the subject, which would seem to justify so scant and indefinite a description of the place of the alleged trespass as we find in this declaration.   I do not regard the fourth and last count as sufficient in this respect, for the description of the *locus in quo* is the same; the only difference is that in the fourth count it is averred that "one Jeremiah Couger was in possession of, and had an estate for and during his natural life in, a tract of land containing three hundred and forty four acres, more or less, lying on Elk river, in Randolph county, West Va., and the plaintiffs were and are now the owners of and vested with the immediate remainder in fee in said land."   Here possession is only used to describe his estate, *viz.* that he was seized and possessed of the freehold for life, not that he resided on the land, as a description of the land itself. From the nature of such cases the *locus in quo*—the place— is material and traversable; therefore it can not be omitted, but must be alleged with reasonable certainty of description.   Code, c. 125, ss. 32, 34.

The rule of pleading is that the declaration must allege what is required to be proved— that is, the facts constituting the cause of action, with such other allegations as are required for the right understanding of such material al-

legations—with such precision, certainty, and clearness that the defendant, knowing what he is called upon to answer, may be able to plead a direct and unequivocal plea, that the jury may be able to give a complete verdict upon the issue, and the court, consistently with the rules of law, may give a certain and distinct judgment upon the premises. See 1 Chit. Pl. 258.

It needs no bill of exceptions to make the overruling of the demurrer a ground of motion for new trial, for that fact already appears by the record; but as to other matters complained of as error, and as grounds of such motion, they must be made part of the record by bill of exceptions signed by the judge.

At this stage of the case the point is made by the counsel for the defendants in error (plaintiffs below) that the bills of exception are not in such form, and the evidence is not so certified, as to make them parts of the record. This is not made good by an examination of the record, for it is not necessary that there should be a separate bill of exceptions taken and signed to each ruling of opinion of the court; such exceptions, though they may be numerous, may be incorporated into one bill of exceptions. *Snyder* v. *Railway Co.*, 11 W. Va. 14, 32. In this instance, four bills of exception, each complete within itself, are numbered and set forth *seriatim*, conjointly, in one bill, which is signed as the signature of each, and made part of the record. The court evidently anticipated something of this sort, and, following the analogy of a joint and several bond, made each one of the four bills several, and each one a part of every other. Then follows: "The court certifies the following evidence introduced upon the trial of the above cause." Then follows the evidence, and the certificate closes as follows: "And there was no other evidence introduced on said trial (except there was evidence tending to corroborate the plaintiff's evidence as to possession) and the same is certified and made part of the record in this cause"—signed by the judge presiding, which certificate is referred to in the bill of exceptions, and the order book notes the taking thereof, and making the same a part of the record. I do not see what

else could be required to be done to make them parts of the record.   See *Wickes* v. *Railroad Co.*, 14 W. Va. 157.

From the certificate of evidence the following facts appear:   The tract of land on which the alleged trespasses were committed calls to contain three hundred and forty four acres, is situate in Randolph county, on Elk river, at the mouth of the Valley fork.   Peter Conrad, by deed dated 29th day of October, 1853, conveyed the same to Lewis Couger, Peter Couger and John Couger in fee, subject to a life estate in their father, Jeremiah Couger, who was then living on it, and still lives on it.   This deed recites that it is the same land which was conveyed to Peter Conrad by David Goff, commissioner, by deed dated 3d November, 1836, and duly recorded.   Lewis Couger died unmarried, and without children, about 1861-65, leaving his father, Jeremiah Couger, his heir at law.   About the year 1867 or 1868 plaintiff Charles McDodrill, as he claims, brought suit against Lewis Couger's administrator and his heir, namely, his father, Jeremiah Couger, to enforce payment of a bond of one hundred dollars against Lewis Couger's estate.   Such proceedings were had that the Circuit Court of Randolph county, by decree entered on the 22d day of August, 1868, directed a sale of the reversionary interest of Lewis Couger in the tract of land in the bill and proceedings mentioned, and appointed Joseph A. Thompson a special commissioner to make such sale.   On the 24th day of August, 1869, he made sale thereof to plaintiff McDodrill for the sum of two hundred and thirty one dollars, and reported the sale to court; and the court, by decree entered on the 9th day of November, 1871, confirmed the sale and appointed Thompson commissioner to convey the same to the purchaser upon payment of the balance of the purchase-money.   This being paid by McDodrill, Thompson, as commissioner, by deed dated October 1, 1872, reciting these facts and decrees, conveyed the same to McDodrill, which deed was duly admitted to record on the same day.

Plaintiffs also proved by W. H. Wilson, clerk of the Circuit Court of Randolph county, and, as such, keeper of its records, that he had made careful and diligent search on

three different occasions for the bill and papers in said cause in his office, and was unable to find them, but he had never seen the bill or papers at any time. The original decree entered on the first hearing is not introduced. The court permitted the deed from Commissioner Thompson and these three copies of decrees to be read in evidence on behalf of plaintiffs against the objection of defendant. This is defendant's ground of error No. 2.

Where a deed made under a decree by a commissioner or other authority is offered in evidence as a conncting link of the party's claim of title to land it is necessary to introduce with it so much of the record of the suit in which such decree was made as will satisfactorily show that the persons having the legal title to the land conveyed were parties to the suit, and as will identify the land. *Waggoner* v. *Wolfe,* 28 W. Va. 820. In that case, as in this, it was proved by the clerk that the file of papers was lost. Here the recitals in the commissioner's deed made in pursuance of the decree state that the chancery suit was pending in the Circuit Court of Randolph county, in which the said Charles McDodrill was plaintiff and John M. Phares, administrator of Lewis Couger, Jr., deceased, and Jeremiah Couger and Joseph E. McDodrill were defendants. The oral evidence shows that the said Jeremiah Couger was the father and only heir at law of Lewis Couger, who died intestate, unmarried and childless, seized and possessed in fee simple of an undivided third of the tract of land in question, subject to the life estate of his father, the said Jeremiah. The deed of Commissioner Thompson and the decrees were at that stage provisionally admissible in evidence as color of title, and were therefore competent evidence. Whether the legal effect of the deed was to transfer the legal title presents a different question.

Plaintiffs also showed that some years ago Peter Couger, one of three grantees of this land by the deed of Peter Conrad, departed this life, leaving as children and his heirs at law the infant plaintiff Martha Couger, and also the following: George W. Couger, who conveyed his interest to plaintiff McDodrill by deed dated the 28th day of January,

1891; Debby J., wife of James M. Jackson, who conveyed to McDodrill their interest by deed dated the 15th day of March, 1890; Minerva A., wife of Joseph Daft, who conveyed to McDodrill their interest by deed dated 13th day of May, 1889. So that plaintiff McDodrill had all the interest of Peter Couger except that of his infant co-plaintiff. Plaintiff McDodrill also introduced in evidence a deed of special warranty to himself from John Couger, dated the 17th day of March, 1890, for all his right, title, interest, claim and demand in this tract of land, he being one of the three grantees from Peter Conrad. But John Couger had, by deed dated on the 19th day of January, 1889, duly acknowledged and admitted to record in the clerk's office of the county court of Randolph county, sold to George W. Curtin, a member of the defendant corporation, for the sum of forty dollars in hand paid, thirty two of the trees in controversy, and his father, Jeremiah Couger, the life tenant, and in one view the owner in fee of an undivided third, then in actual possession, by deed dated the 2d day of February, 1889, duly acknowledged and admitted to record on the 13th day of May, 1889, for the sum of fifty six dollars and twenty five cents sold to said Curtin forty five standing trees, the remainder of the subject of controversy. No time was fixed in either contract within which the trees were to be cut and taken away; therefore they had a reasonable time. *Hanly* v. *Watterson,* 39 W. Va. 214 (19 S. E. Rep. 536). But full rights of way over the land were given, and the trees were afterwards cut and taken away by defendant and sawed, making one hundred and thirteen thousand eight hundred and sixty four feet board measure. These trees, as they stood on the ground, were shown by plaintiff's evidence to be worth from five dollars per one thousand board measure, up to fifteen dollars per tree; by defendant's evidence, to be worth from one dollar and twenty five cents to one dollar and fifty cents per standing tree. Jeremiah Couger, the life tenant, was at the time in possession of the land under the Peter Conrad deed, and had been in actual possession under such claim continuously for at least thirty seven years, and since the death of his son, Lewis, as owner in fee of one third of

it. There was no evidence that the land had ever been granted by the commonwealth or state to any one.

The ground of error No. 3 is that the court overruled defendant's motion to exclude all the evidence of plaintiffs on the ground that no grant from the commonwealth was shown, no color of title ripened into a perfect one by adversary possession, no right of recovery on any ground shown on behalf of plaintiffs. We have already seen that the deed of Commissioner Thompson was admissible at that point in the case provisionally—was admissible as giving color of title to his claim of ownership, and showing the nature, the boundaries, and extent of such claim. Whether it was sufficient to show a divesting of the heir of and the investing of the purchaser with the legal title will be considered under another head. In such refusal of the court there was no error, for the following reasons: (1) Plaintiffs and defendant derive title to the trees from a common source. In such case the plaintiff need not trace his title back beyond such common fountain, from which both claims of ownership emanate. *Boiling* v. *Teel,* 76 Va. 493; Newell, Eject. p. 485. (2) It is not a suit to try adverse titles to the land, but an action on the case by the remainder-man for waste committed, to the permanent injury of his interest in the freehold; the tenant for life being in actual possession. (3) Even as against the state, under our statute, the Couger title has been perfected by length of continuous actual possession under the Peter Conrad deed; for, by section 20 of chapter 35 of the Code, "every statute of limitation, unless otherwise expressly provided, shall apply to the state." And the estate of the life tenant, of which he is seized by such actual possession, and the estate in fee simple in remainder, constitute but one freehold in law; and therefore such possession of the life tenant, so far as it perfects his own title, inures in the same way to the benefit of those entitled in remainder. (4) And what plaintiffs sought for could only have been given, under the circumstances, by instruction given to the jury, or withdrawing the deed of the commissioner, and not by taking the case from them entirely, for there was no controversy that plaintiff McDodrill

was the owner by legal title of some undivided part of the land. And now, as already intimated, it becomes necessary to regard the life tenant Jeremiah Couger, as invested, under the statutes of descent, with the legal title to one third of the remainder in fee, as the heir at law of his son, Lewis Couger, who died intestate, unmarried and childless, about the time of the war in 1862, and as one of the cotenants, for such, in the record as it stands, he appears to be. As to the bill and file of papers in the chancery cause entitled, at the head of the decree, "Charles McDodrill, Complainant v. Lewis Couger's Adm'rs, Defts. In the Circuit Court of Randolph county," the clerk of that court testifies that he has searched for it, and can not find it; that on the 12th day of August, 1893, he had been clerk nine years, and had never at any time seen the bill or file of papers. The first decree is not produced. The one entered on the 22d day of August, 1868, begins, "This cause came on again to be heard upon the papers formerly read." Neither one of the three shows by recital or in any way that Jeremiah Couger was a party to the suit, or had anything to do with it; and the administrator does not represent the real estate. The defendant claims under the grant of timber made by Jeremia Couger to George W. Curtin, so that the effect of the commissioner's deed to transfer the legal title from Jeremiah Couger, as the heir at law of Lewis Couger deceased, is directly involved and put in issue in this suit. The deed of Commissioner Thompson does recite that Jeremiah Couger was a party defendant in the suit, but such recital in the deed, by itself, is clearly insufficient to show that Jeremiah Couger was a party to the suit, as against him and those claiming under him, where the transfer of the legal title is directly brought in question; and both, being strangers to the deed, are not bound by its recitals. To hold otherwise would be proving in a circle. He was a party to the suit; therefore he is privy to the deed. Being privy to the deed, its recitals are competent evidence against him and his grantee. The recitals being competent evidence, they state that Jeremiah Couger was a party to the suit; therefore the effect of the commissioner's deed was to di-

vest Jeremiah Couger of the legal title  See *Wiley* v. *Givens*,
6 Gratt. 277; *Walton* v. *Hale*, 9 Gratt. 194; *Bower* v. *McCormick*, 23 Gratt. 310, 327.

It is a well established principle that in adversary proceedings in a court of equity for the sale of land nothing
but the title which is vested in the parties to the proceeding
can be sold; and a deed made under a decree in such proceedings carries with it only the title of the parties to the
suit.  *Adams* v. *Alkire*, 20 W. Va. 480; *Waggoner* v. *Wolfe*,
28 W. Va. 820.  See *Hall* v. *Hall*, 12 W. Va. 1.  And where
the fact whether one was a party to such suit is brought into
question directly, and not simply on some collateral proceeding, a recital in the deed made by the commissioner, professing to convey the land in question, is in and of itself not
sufficient evidence that the court directing the deed to be
made had jurisdiction of the person.  In this state the administrator does not represent the land; the heir at law
must be before the court.  The remarkable fact about this
case is that the decrees introduced recite that the administrator of Lewis Couger is a party, but nowhere is there any
mention of Jeremiah Couger, the heir at law, being a party.
We would naturally look for it in the decree entered on the
first hearing of the cause.  The non-production of a copy of
that decree justifies the inference that it would do the plaintiff's title no good.  Our records show that proceedings have
been had in this state to sell by decree the real assets with
no one before the court but the administrator, and such
decrees have been held to be mere nullities as against the
heir.  Whatever be the cause, the non-production of a copy
of the first decree can not but attract observation.  For a
summary of the general principles governing jurisdictional
inquiries, see Freem. Judgm. § 124; Freem. Jud. Sales, § 8;
Newell, Eject. § 87 *et seq.*, p. 489.

At this stage of the case, after the evidence was all in, and
the court was called on to instruct the jury, this deed of
Commissioner Thompson should have been withdrawn by
the court as evidence, or at least the jury should have been
expressly instructed as to its legal effect—that is, that it
did not operate as a transfer of the legal title; especially as

the counsel for defendant had asked that it should be stricken out as evidence, or not be considered by the jury. That this was error to the prejudice of the defendant below (plaintiff here) plainly appears by what follows, for such exclusion ought also to have had the effect to limit to that extent the amount of plaintiff's recovery; and because it showed that Jeremiah Couger, who now appeared to be one of the co-owners of the reversionary interest, had not been joined as a plaintiff; and the court instructed the jury, on motion of defendant, that unless all the co-owners were so joined there could be no recovery in such an action as this. These instructions given for defendant are as follows (1) "The court instructs the jury that the burden is on the plaintiffs to establish their right by satisfactory proof, and unless the plaintiffs have established their title to the satisfaction of the jury, the verdict should be for defendant." (2) "The court further instructs the jury that unless all the co-owners of the reversionary interest join as plaintiffs, there can be no recovery in such action as this." Of course, these instructions would have been properly modified had the court been led to take the above view of the legal effect of the commissioner's deed.

Defendant's fourth assignment of error is based on the giving by the court on motion of plaintiffs, and against the objection of defendant the following four instructions: "No. 1: The court instructs the jury that the deed from Peter Conrad to Lewis Couger, Peter Couger, and John Couger did not confer upon Jeremiah Couger the right to cut and remove from the land therein mentioned the marketable timber thereon, or to sell and dispose of the same for the purpose of removal from said land; and that the contract between Jeremiah Couger and George W. Curtin did not confer upon the said Curtin, or any one claiming under him, the right to cut and remove from said land any of the marketable timber thereon. No. 2: The court instructs the jury that one tenant in common or joint tenant has no authority without the consent of his cotenant, to commit waste on the lands owned by them, by cutting and removing therefrom the marketable timber thereon, or to authorize another

so to do.    No. 3: The court instructs the jury that a person holding a life estate in land has no right or authority to cut or remove therefrom the valuable and marketable timber thereon, nor can he confer such authority upon a stranger without the consent of the persons owning the immediate remainder in fee; and the persons owning the immediate remainder in fee are not authorized to cut and remove from said land said timber before the life estate is terminated, without the consent of the person owning the life estate. No. 4: If the jury believe from the evidence that the defendant cut and removed and converted to its own use any of the marketable timber on the land in the declaration mentioned, and that at that time the plaintiffs were the owners in fee of the said land, subject to the life estate therein of Jeremiah Couger, then the defendant was not authorized, by the contract read in evidence between Jeremiah Couger and George W. Curtin and John Couger and George W. Curtin, to cut and remove the said timber without the consent of the plaintiffs, and if the same was done without consent, the plaintiffs are entitled to recover from the defendants such damages as they have sustained by reason of such cutting and removal of timber; and in ascertaining such damages the jury have the right to take into consideration not only the value of said timber, but the permanent injury occasioned to the said land by reason of the cutting and removal thereof." These instructions, as we see, cover the point that the evidence tended to raise of waste on the part of a life tenant or his grantee as against the remainder-men who were cotenants in fee, and of waste committed by such remainder-men, being cotenants, as between each other; but not the case of a life tenant of the whole and a co-owner of an undivided third of the immediate remainder in fee.    If the learned judge who tried the case below had been able to give the point involving the legal effect of the deed of Commissioner Thompson more mature consideration, he would have been led to modify these instructions also so as to meet that aspect of the case.    He treated standing timber trees as part of the realty—this, as a general rule, is well settled (*Schulenberg* v. *Harriman*, 21 Wall. 64)—and correctly instructed the

jury that the life tenant had no right to cut and remove such timber without the consent of those in remainder. The tenant for life has the common right of all tenants to cut wood for fuel to burn in the house, for the making and repairing of all instruments of husbandry and of fences, but not to sell the timber, although the proceeds be applied to repairs. See 2 Minor, Inst. pp. 100, 101; Lomax Dig. p. 60; Williams, Real Prop. (Am. Notes, p. 148; 17th Internat. Ed.) p. 127. Still the land in question was for the most part in woods. It was certainly intended that the life tenant might clear, for the purpose of farming, to any extent he saw fit, provided he left wood and timber enough for the permanent use of the farm. See *Jackson* v. *Brownson*, 7 Johns. 227. The deed conveying the land has this in conclusion: "And it is understood strictly that Jeremiah Couger is to have the use and control of said land during his natural life, and then to go to the aforesaid Lewis, Peter, and John Couger." In this state the law of waste must be so viewed as to accommodate it to circumstances of a new and unsettled country. *Findlay* v. *Smith* (1818) 6 Munf. 134. See *Macaulay* v. *Land Co.* (1843) 2 Rob. (Va.) 507, 527. If the life estate were ended, each and every cotenant would have the right to take possession peaceably, and have the reasonable enjoyment thereof in some of the ordinary methods of reaping profits from property of like character under like circumstances. Freem. Coten. § 251; *Hawley* v. *Clowes*, 2 Johns. Ch. 122. Thus, if timber standing on the land is of proper size and condition for advantageous sale, either of the cotenants, it is said, may lawfully proceed to cut and sell it; for in so doing he makes no unusual use of the real estate of which he is a tenant in fee. Freem. Coten. § 251. *Baker* v. *Wheeler* (1832) 8 Wend. 505, 24 Am. Dec. 66, and note, was an action of trover, where it is held, *inter alia*, that license by one tenant in common to a third person to cut timber on the common land is good, and gives such person title to the trees cut. The note is quite a full discussion of the measure of damages in such cases. *Bradley* v. *Boynton* (1843) 22 Me. 291; *Alford* v. *Bradeen* (1865) 1 Nev. 230; *Hihn* v. *Peck*, (1861) 18 Cal. 641, on injunction affirmed in *Carpentier* v. *Webster*, July 3,

1868, not reported. As to quicksilver mine, see *McCord* v. *Mining Co.* (1883) 64 Cal. 135, where there is a full discussion of the general subject. One tenant in common can not maintain an action on the case in the nature of waste against another tenant in common in possession of the whole, having a demise of the moiety from the first, for cutting down trees of a proper age and growth for being cut. *Martyn* v. *Knowllys* (1799) 8 Term. R. 145; 1 Taunt. 241.

The mere act of selling the standing timber was not waste. They were sales and grants by deed of some interest in the realty, and, being duly recorded in the proper county, had the effect of notice to all subsequent purchasers; so that such purchaser took it subject to such rights, whatever they may be. The subsequent cutting of the timber constituted the waste, if any, which involves different questions; and in any event the plaintiffs would be entitled to recover only their proportionate part of the damages, measured by the quantity of their interest in the timber cut and carried away. See Freem. Coten. § 356; *Carpenter* v. *Small*, 35 Cal. 346; *Cain* v. *Wright* (1858) 5 Jones (N. C.) 282, 72 Am. Dec. 551. In fact, I think this is included in the meaning of our statute on the subject of waste between co-tenants (section 2 of chapter 92 of the Code). The jury evidently included in their verdict damages for all and the whole of the trees cut, in the interest of Jeremiah Couger and of John Couger, who had sold the trees to defendants.

The propriety of limiting such recovery of the cotenant to an amount in damages proportionate to his interest in the land may receive some further indirect confirmation from section 14 of chapter 100 of the Code, which, among other things, provides that an action of account may be maintained by one joint tenant, or tenant in common, or his personal representative, against the other, for receiving more than comes to his just share or proportion, and against the personal representative of any such joint tenant or tenant in common. And if the property admits of use and occupation, by several, and less than his just and proportionate share of the common property is used by the occupying cotenant, who in no way hinders or excludes the others, he is not ac-

countable to his cotenants for the profits of that portion of the property owned by him within the meaning of this statute. *Dodson* v. *Hays,* 29 W. Va. 577 (2 S. E. Rep. 415). But here the estate for life was not ended, and an undivided third interest in the immediate remainder in fee had, by our statute of descent, come to the father, the tenant for life. I take for granted that by operation of the law of merger an undivided third of the life tenant's freehold was thereby enlarged to a fee; but that such union of such part of his particular estate with such part of the immediate remainder in fee came to him by descent did not operate in any way to defeat, impair or otherwise affect his own particular estate or the remainder. If it had the effect to merge the life tenant's whole legal estate, then it would be to be held for the use of the life tenant for life. See section 13, chapter 71, of the Code; *Scott* v. *Scott* (1868) 18 Gratt. 150, 160; *Wiscot's Case* (1599) 2 Coke, 61; *Crump* v. *Norwood,* 7 Taunt. 362, goes to sustain the first view, and it would not affect the creditors of Lewis Couger, deceased, otherwise than as provided by section 5 of chapter 86 of the Code, making the heir liable to those entitled as creditors for the value thereof, with interest; and we see that he did by deed sell to defendant part of the standing timber trees here in controversy, which might have some bearing upon the case as to the remedy, and as to what would have been his liability, and what is the liability of his vendee growing out of his relation as life tenant to the owners of the remainder in fee, as governed by the doctrine of waste.

The fifth ground assigned is overruling defendant's motion to set aside the verdict and grant a new trial for the errors already assigned, specifying them, and also as contrary to law and the evidence. This was followed by a motion in arrest of judgment, made and overruled at the same time. "Arrests of judgment arise from intrinsic causes appearing on the face of the record, * * * as where the verdict materially differs from the pleadings and issue thereon, * * * or if the case laid in the declaration is not sufficient to found an action upon"; and this has already been considered in discussing the demurrer. "And it is an inva-

riable rule that whatever matter of law is alleged in arrest of judgment must be such matter as would, upon demurrer, have been sufficient to overturn the action or plea." 3 Bl. Comm. 394. The verdict for the plaintiffs is general on the plea of not guilty. There is no special finding that differs from the pleadings and issue; so that in this case there was no ground for motion in arrest of judgment that was not covered by the motion for a new trial, and also by the demurrer. This fifth ground of error need not be further discussed, for we have already seen that the demurrer to the declaration should have been sustained, not because it appears upon its face that one of the plaintiffs is an infant, therefore can not sue—for, as to the first three counts, we can not presume that she has a guardian who has been appointed and given bond as required by law before he is entitled to the possession of his ward's estate, and as to the fourth and last count we are inclined to think that she can bring an action on the case for damages to her estate in remainder—but because the *locus in quo,* the place where the act was done, is a material and traversable allegation, and should, therefore, be alleged with some reasonable degree of certainty and definiteness of designation. We have also seen that, as the evidence stood at its close, it was error to leave the deed of Special Commissioner Thompson to plaintiff C. McDodrill in evidence before the jury at all, or at least without having instructed them that it did not have the effect of transferring the legal title, and also without having adapted the other instructions given to such a state of facts.

Therefore the judgment complained of must be reversed, and proceeding to give such judgment as the Circuit Court ought to have given, the verdict is set aside, and the cause remanded for a new trial.