# CHARLESTON.

McGee *et al v.* Sampselle *et al.*

Submitted June 23, 1899—Decided December 9, 1899.

1. Delinquent Sale.—*Sheriff's Affidavit—Title.*

The law requires the sheriff to append to his return of delinquent lands a prescribed affidavit. If he omits to do so, and such land is subsequently sold by the sheriff, and by him purchased on behalf of the State, such omission will vitiate the sale, and the State will thereby acquire no title to the land. ' (p. 356)..

2. Delinquent Sales—*Statute Construed.*

Where the State becomes the purchaser of land at a delinquent sale, the requirements of the statute with reference to the return and sale of delinquent lands must be complied with before the title to such land becomes vested in the State. (p. 358).

3. State—Purchaser—*Curative—Statute.*

The curative provisions of section 25 of chapter 31 of the Code do not apply where the State becomes a purchaser of land at a delinquent sale. (p. 358).

4. Purchaser Delinquent Sale—*Title.* ·

When the proceedings for the return and sale of a tract of land as delinquent for the non-payment of taxes are such

as to confer title upon an individual or the State as a pur-
chaser thereof, such purchaser becomes vested with such es-
tate in and to the land so purchased as at the commencement
of, or at any time during, the year for which said taxes were
assessed, was vested in the party assessed with said taxes.
(p. 358).

Appeal from Circuit Court, Mingo County.

Bill by Nancy Brown and William McGhee against L. A.
Sampselle and others. Decree for defendants. Plaintiff
McGhee appeals.

                                                    *Reversed.*

H. K. SHUMATE and CAMPBELL, HOLT & CAMPBELL, for ap-
pellant.

R. H. HOYLE, for appellees.

ENGLISH, JUDGE:

The questions presented for consideration in this case
arise out of conflicting claims to the timber on a certain
tract of land of two hundred and fifty acres, now situated
on the waters of Bens creek, Mingo County, formerly in
Logan County. It appears from the record that on the 4th
of June, 1888, Enoch Gibson, who then owned one thousand
five hundred acres on Bens creek, then in Logan County,
sold and conveyed to petitioner William McGhee, one thous-
and nine hundred and seventy-six poplar trees on said
land, which trees were marked with the letter "M," with
an ax. The deed for same was recorded June 24, 1888.
On December 16, 1889, said Gibson conveyed to Nancy
Brown, his daughter, two hundred and fifty acres, a por-
tion of said one thousand five hundred acres, reserving and
excepting the marked poplar timber. On the 28th of Sep-
tember, 1895, Nancy Brown and her husband sold and
conveyed to said William McGhee three hundred and
twelve yellow poplar, cucumber, and ash trees, and seven
hundred and seventy-three oaks, standing on said two hun-
dred and fifty acre tract, also marked with an "M," which
deed was recorded November 28, 1895. This two hundred
and fifty acre tract was returned delinquent for alleged
non-payment of taxes for the year 1891 in Logan County.
Subsequently the sheriff undertook to advertise and sell

this tract for taxes. And on November 19, 1895, a suit was instituted in the name of the State of West Virginia in the circuit court of Mingo County against said Nancy Brown and many others, not including McGhee, the process in which suit was made returnable to December rules, was served upon some of the defendants, and returned "Not found" as to Nancy Brown. At the December rules, 1895, the bill was filed, embracing different tracts of land and many defendants, including Nancy Brown. The bill prayed for the sale of the land, alleging that it had been properly returned delinquent; that it had been sold and bought in by the sheriff for the State; that the land had been certified by the auditor to the commissioner of school lands, and by him reported to the circuit court as liable to sale under the provisions of chapter 105 of the Code; and that by reason of said sale and purchase the title had become absolutely forfeited and completely vested in the state, and the same had not been redeemed or released from said forfeiture, and was liable to be sold for the benefit of the school fund. On January 18, 1896, the cause was referred to a commissioner, who reported that the Nancy Brown tract had by reason of the sale and purchase thereof become vested in the state for the benefit of the school fund. On September 23, 1896, a decree was entered confirming the commissioner's report, finding forty-four dollars and eighteen cents taxes and interest against the Nancy Brown tract, and decreeing it and many other tracts to be sold for the school fund. In pursuance of this decree the tract was advertised and sold on the 21st of January, 1897, to the appellee, L. A. Sampselle, trustee, who paid the taxes and interest due the state, which sale was afterwards confirmed, and a deed directed to be made to the purchaser. The return on the original summons being "Not found" as to Nancy Brown, the state obtained permission from the court for the sheriff to amend his return so as to show service upon her. On the 15th of May, 1897, the said Nancy Brown and William McGhee appeared in the cause and filed their joint petition, alleging the conveyance to Nancy Brown of the two hundred and fifty acres by deed dated December 16, 1889, and that McGhee owned the three hundred and twelve poplar and seven hun-

dred and seventy-three oak trees standing on said land, and filed the deeds for same as exhibits. The petition also alleged irregularities in the delinquent list and tax sale as to the Brown tract; that Nancy Brown was not served with process, and McGhee was not made a party defendant in the original suit; the sale and purchase by Sampselle,—and prayed for process against Sampselle, Hoyle, and Hatfield to answer the petition, and that the decree of sale, the sale, and decree confirming same, be set aside, and for general relief. The appellees appeared, waived service of process, and objected to the filing of the petition, which objection was overruled. Said appellees also moved to strike out said petition, and filed their joint demurrer to the same, which motion and demurrer were overruled; and thereupon they filed their joint answer denying the material allegations of the petitions, and the petitioners replied generally. Depositions were taken, and two amended petitions filed, both of which were objected to, and the objection overruled, in each case. They also moved to strike out and demurred to said amended petitions, which motions and demurrers were overruled; and on January 19, 1898, on motion of said Nancy Brown, each and all of said petitions and the entire proceedings were dismissed as to her, and the court, proceeding to determine the cause as to McGhee, decreed that he was not entitled to the relief prayed for in his petition, and dismissed the same at his costs. The act of Nancy Brown in dismissing her petitions, and the proceedings thereunder as to her, leave the said McGhee as the sole appellant.

The first error assigned by him claimed that the court should have set aside the deed to Sampselle, trustee, the sale and confirmation, and the decree of sale, as clouds upon the title of petitioner to the timber aforesaid, and it erred in not so decreeing. In considering this assignment of error, I call attention first to the fact that on the face of the deed from Enoch Gibson and wife to Nancy Brown, filed as Exhibit 1 with the petition of Nancy Brown and W. McGhee, there is an exception of all the marked timber (poplar) from 26 inches up, and all the walnut timber and all the mineral rights (as evidently intended by "miner rights"). Now, it appears from the record in this case

that the sheriff of Logan County made an attempt, under the provisions of section 18 of chapter 30 of the Code, to return said two hundred and fifty acre tract delinquent for the nonpayment of taxes thereon for the year 1891. That section requires that the sheriff or collector shall, on or before the first Monday in June next succeeding the year for which such taxes were assessed, make alphabetical lists, by districts, of three classes; also, "A list of other real estate which is delinquent for the nonpayment of taxes thereon, which shall be in the same form and with the same oath made and subscribed as in the above first mentioned list." Said sheriff, in this case, in attempting to make out and return his delinquent list, utterly failed to do so within the time and manner prescribed by statute, in that he failed within that time to make and subscribe the oath prescribed by statute, and append the same to said list. On this point this Court held in the case of *Jackson* v. *Kittle*, 34 W. Va. 207, (12 S. E 484), as follows: "The law requires the sheriff to append to his return of sales of delinquent lands a prescribed affidavit. If he omit to do so, or omit from such affidavit a material or substantial portion of it as so prescribed, the clerk should not make the purchaser a deed, and if the objection is interposed before the deed is made the sale should be set aside." It is true that when the State becomes the purchaser at a delinquent sale no deed is made to it, but section 31 of chapter 31 of the Code provides for the purchase by the sheriff of delinquent lands on behalf of the State, and a return of a list of the lands so sold by him for the State, and, among other things, provides that the officer making out the list shall make oath that it contains a true account of all the real estate within his county purchased by him for the State during the year, and return the list, with a certificate of the oath attached, to the clerk of the county court within ten days after such sale, who shall within twenty days after such sale record the same in a well-bound book, and transmit the original to the auditor. Section 32 of the same chapter provides that "the auditor shall cause all the lists received in his office under the preceding section to be recorded in a well-bound book, and all such estate, right, title and interest in the real estate men-

tioned in such lists as would have vested in an individual purchaser thereof at such sale, who had obtained proper deeds therefor and caused them to be admitted to record in the proper office, shall be by the sale and the purchase on behalf of the state vested in the State, without any deed or other conveyance therefor to the State." This result, however, does not follow unless the land has been returned delinquent, sold, and purchased by the sheriff for the State in the manner prescribed by statute, and all the material requirements in reference to the return of the delinquent list and return of the sales made by the sheriff or other officer have been in the time prescribed by law, and have been recorded by the clerk of the county court and by the auditor as required by statute. To show the importance of these returns being made in the time fixed by statute, this Court held in *McCallister v. Cottrille*, 24 W. Va. 173, that "it is the official duty of the clerk of the county court to note in his office the day on which the sheriff returned his list of the sale of lands sold for delinquent taxes, and if he fail to make such note or his office shows that such list was not returned and filed therein for more than ten days after the completion of such sales, this, in either case, is such an omission and irregularity as materially to prejudice the rights of the owner of land sold at such sale, and therefore vitiates any deed made to a purchaser of the land by said clerk, or a commissioner appointed for that purpose." Now, then, if the failure of the officer to make his return of the delinquent sales within ten days required by statute must be regarded as such an omission and irregularity as will vitiate any deed made by the clerk in pursuance thereof, how much more should the fact, apparent from the records of the county court in this case, that the delinquent list, which should have been returned before the first Monday in June, 1892, was returned to the clerk's office without any affidavit appended, and that the same list was afterwards returned with affidavit appended bearing the date of 4th of July, 1892,—a date long subsequent to the time such return could have been properly made under the statute! But if this land had been regularly and properly returned delinquent, and sold, the State would only have acquired such title as Nancy Brown had.

Under the ruling of this Court in the case of *Summers* v. *Kanawha Co.*, 26 W. Va. 159, it was held that "the purchaser of land sold for taxes, who has obtained his tax deed therefor, and had the same duly recorded in the proper county, becomes invested with such estate in and to the land so purchased by him as at the commencement of, or at any time during, the year for which said taxes were assessed, was vested in the party assessed with said taxes."

It appears from the testimony that one thousand nine hundred and seventy-six poplar trees were purchased by the appellant from Enoch Gibson in 1887-89; that he took a deed for same, and had it recorded, and paid taxes on the trees; and that the two hundred and fifty acre tracts sought to be sold as delinquent was conveyed to Nancy Brown by her father, Enoch Gibson, and on the face of the deed he expressly excepted all of the marked poplar timber from twenty-six inches up, and all of the walnut timber. So she never had any title to the marked poplar timber over twenty-six inches, nor the walnut timber on the tract when it was attempted to be returned delinquent in 1891. In order that the State should acquire the title which was vested in the party in whose name the land was assessed at the time it was returned delinquent, all of the material requirements of the statute in regard to the return and sale of delinquent land must be complied with. See *Twiggs* v. *Chevallie*, 4 W. Va. 463, (Syl., point 2). The curative provisions of section 25 of chapter 31 of the Code do not apply where delinquent lands are purchased by the sheriff on behalf of the State, and, if they did, the omission to append the affidavit required by statute to the delinquent list, and have the same properly recorded by the clerk, is such an error as renders the subsequent proceedings a nullity. My conclusion is that the State acquired no title to said tract of land, or the timber standing on it, by reason of said sale; that the court erred in dismissing appellant's petition; and the decree complained of is reversed, and the cause is remanded.

Brannon, Judge:

While agreeing to the decision, I cannot at present see why the curative provisions for deeds to the individual

purchasers do not apply to the State, though I have not thoroughly examined the matter. The State does not guaranty the action of her officers.

ON REHEARING.

English, Judge:

After a careful consideration of the arguments presented both at the time the cause was originally heard and upon rehearing, I am unable to reach a different conclusion from that arrived at in the foregoing opinion, which contains the reasons upon which it is based. In addition thereto, however, it may not be improper to call attention to the fact that this two hundred and fifty acre tract was returned delinquent in the name of Nancy Brown, and, if the pro- cedings were of the most regular character, the state could have thereby acquired only such interest in the land as Nancy Brown possessed; and unless a perfect title was acquired by the State the subsequent procedure by the school commissioner could confer no more title than belonged to Nancy Brown at the date of the sale. The record shows that the marked poplar timber from twenty-six inches up, and all of the walnut timber, on said two hundred and fifty acre tract never belonged to Nancy Brown, because, the same was expressly reserved on the face of said deed by which she acquired title from her father, and that she sold and conveyed to McGhee three hundred and twelve yellow poplar, cucumber, and ash trees, twenty-two inches in diameter and upwards, marked "M," and seven hundred and seventy-three oak trees then growing on said land, by her deed of September 28, 1895, which made said McGhee a complete purchaser of said timber long before the institution of this suit on November 19th following, and although said deed was not recorded until the 28th of November, 1895, McGhee was not a *pendente lite* purchaser. This tract was returned as delinquent in the name of Nancy Brown, and as a consequence such title as she had was sold, and purchased by the sheriff for the State. No return was made as to McGhee's interest, and fo course no sale of same was made; and, unless his timber was sold, the State, as a purchaser, could not acquire

the ownership of same.    The commissioner of school lands could only sell such interest as was purchased by the State, and that was Nancy Brown's title, and not the timber on the land which was reserved in the deed from her father, and which she had sold to McGhee.

It is claimed, this being a judicial proceeding, and the decree of sale having been executed and the sale confirmed, that, even if the decree be set aside, the purchaser's title should not be affected, under section 8 of chapter 132 of the Code.    This, however, has reference to a decree of confirmation, where proper parties are before the court. See *Underwood's Ex'r* v. *Pack*, 23 W. Va. 704; *Hughes* v. *Hamilton*, 19 W. Va. 368; *Capehart's Ex'r* v. *Dowery*, 10 W. Va. 131.    If the commissioner of school lands had examined the title of Nancy Brown which he proposed to sell, he would have seen on the face of her recorded deed an exception of a large portion of valuable timber thereon. As above stated, the deed from Nancy Brown to McGhee was executed on September 28, 1895, and admitted to record on November 19th following.    The decree directing the sale of said tract was not rendered until September 23, 1896, and the decree confirming the sale bears date January 23, 1897.    The purchase of this tract by Hoyle and Sampselle was made between these dates, long after the recordation of McGhee's deed; and, this being a judicial sale, the doctrine *caveat emptor* applies.    See Ror. Jud. Sales, § 476, where it is said, "The rule *caveat emptor* applies in all its rigor to judicial sales."    See, also, *Id.* § 174. These purchasers had constructive notice of McGhee's title to the timber described in his deed, and they also had like notice of the fact that Nancy Brown never owned the timber excepted from her deed.    These considerations would apply if the proceedings by the sheriff to sell said tract were regular and proper, and vested title thereto in the State; but as we have held in the opinion handed down, and which I now adopt, said proceedings were irregular and not such as confer title on the State, either to the land or the timber standing thereon.    As before, I conclude that the court erred in dismissing the appellant's petition, and the decree complained of is reversed, and the cause remanded.

*Reversed.*