STATE OF WEST VIRGINIA *v.* BLACK BAND CONSOLIDATED COAL COMPANY, *et al.*

(CC 465)

Submitted April 11, 1933.   Decided May 16, 1933.

(Rehearing denied June 27, 1933)

*Homer A. Holt*, Attorney General, and *Ira J. Partlow*, Assistant Attorney General, for the State.

*P. H. Murphy*, for School Land Com'r of Kanawha County.

*Price, Smith & Spilman* and *John J. D. Preston*, for Cambridge Gas Co.

MAXWELL, JUDGE:

On this certification there is presented the question of the sufficiency of the answer of Cambridge Gas Company filed in the chancery cause of the State of West Virginia v. Black Band Consolidated Coal Company and others. The trial chancellor sustained a demurrer to the said answer and certified his ruling to us for examination and review.

The suit is prosecuted on behalf of the state by the commissioner of school lands for Kanawha County to subject to sale for the benefit of the public school fund certain described parcels of land alleged to have become forfeited to the State.

Numerous parcels are involved in the suit, but those about which the respondent is concerned are the Garnet Pickens Wisman lands (five parcels), acquired by her from her father, Roman Pickens, deceased, which lands are subject to leases for oil and gas purposes owned by said respondent. These lands were assessed for taxation for the year 1927 in the name of Roman Pickens. The taxes for said year not being paid, the lands were returned delinquent and later sold by the sheriff, the State of West Virginia becoming the purchaser. The said parcels not being redeemed within one year after the sheriff's sale, the auditor certified them to the commissioner of school lands for Kanawha County as forfeited to the State. This suit followed.

The State asserts its right to sell the Pickens lands free and acquit of the said oil and gas leases. By its said answer, the Cambridge Gas Company challenges that position and asserts that if and when the said lands are sold by the State for the benefit of the school fund, such sale must be subject to the rights of the respondent under its oil and gas leases.

It appears from said answer that the respondent and its predecessors have caused the said leaseholds to be regularly assessed against them on the personal property books of said county for the district in which said lands are located, and that since the creation of said leaseholds the taxes thereon, including the year 1927, have been regularly and fully paid.

The precise question is this: Is an oil and gas lease extinguished when the land to which it pertains is sold by the state as forfeited, after having become delinquent for nonpayment of taxes and purchased by the state at a sheriff's sale, though the lease was separately assessed to the owner thereof as personalty and taxes thereon paid for the year of the delinquency of the land?

An oil and gas lease is a chattel real. *Coal & Coke Co.* v. *Tax Com'r.*, 59 W. Va. 605, 621, 53 S. E. 928. Chattels real are specifically subjected to taxation. Code 1931, 11-5-2. And, by provision of the same section, the assessed value of a chattel real is to be deducted from the assessed value of the principal estate "to the end that the valuation of such leasehold estate and the remainder shall aggregate the true and actual value of the estate." When the owner of the leasehold (chattel real) has complied with this law and has paid taxes on his property, what becomes of it when the land is sold by the state as forfeited? By way of analogy, in seeking an answer to the query, let us look to another phase of our tax laws and ascertain the situation there.

The law requires the separate assessment of any mineral in land, or the timber thereon, when the ownership of such mineral or timber is vested in a person other than the owner of the surface. Code 1931, 11-4-6. This requirement is found in the Codes of 1913 and 1923, section 39 of chapter 29. The cases hold that a tax deed based on taxes assessed to the owner of the surface, who was not the owner of the minerals or timber, does not pass title to the minerals or timber.

In *McGhee* v. *Sampselle*, 47 W. Va. 352, 34 S. E. 815, where marked timber had been sold, it was held that title to the timber did not pass to a purchaser of the land at a forfeiture sale, made by the state, based on a delinquency in payment of taxes charged against the owner of the land from which the timber had been sold prior to the delinquency, the timber

having been separately assessed and the taxes thereon paid.

In *Dingess* v. *Huntington Development and Gas Company,* 271 Fed. Rep. 864, the Circuit Court of Appeals, Fourth Circuit, interpreting the West Virginia statute (Code 1913, chapter 29, section 39), held that when one person is the owner of the surface and another of the mineral under it, a tax deed, based on taxes assessed to the owner of the surface did not convey title to the mineral rights. And further, that case held that where there has been a severance, there is presumption that the law was complied with and separate assessments made. Of like import: *Miller* v. *Estabrook,* 273 Fed. Rep. 143; *Huntington Development & Gas Co.* v. *Stewart,* 44 Fed. Rep. (2d) 119. Of course, even though there has been a severance of the mineral or timber from the surface, if it affirmatively appears that such mineral or timber, separately owned, has not been separately assessed, but that the entire estate has been assessed to the surface owner, delinquency and forfeiture of the estate charged to the surface owner carries with it the mineral and timber. *Peterson* v. *Hall,* 57 W. Va. 535, 50 S. E. 603; *Wellman* v. *Hoge,* 66 W. Va. 234, 66 S. E. 357.

The rule that estates in minerals or timber, separately assessed, are protected by the law from forfeiture of the principal estate, is consonant with our statutory provisions which limit the estate acquired by the state and sold by it for tax delinquency, to the exact estate against which the taxes were assessed. When sale of real estate is made by the sheriff at a tax delinquency sale, and, in due course, a deed for such real estate is made to the purchaser by the county clerk, there passes to the purchaser under the deed "such right, title and interest in and to such real estate as was vested in the person or persons charged with the taxes thereon for which it was sold, at the commencement of, or at any time during the year or years for which such taxes were assessed, and all such right, title and interest therein of any other person or persons having title thereto, who have not in his or their own name been charged on the land books of the proper county or assessment district, with the taxes chargeable on such real estate for the year or years for the taxes of which the same was sold,

and have actually paid the same as required by law * * *.''
Code 1931, 11-10-22.

When no person at a tax sale bids the amount of taxes
charged against a parcel of delinquent land offered for sale,
the sheriff shall purchase the same on behalf of the estate.
Code 1931, 11-10-28. Under such purchase ''all such estate,
right, title and interest in the real estate mentioned in such
lists as would have vested in an individual purchaser thereof at
such sale who had obtained proper deeds therefor and caused
them to be admitted to record in the proper office, shall be by
the sale and the purchase on behalf of the State vested in the
State * * *.'' Code 1931, 11-10-29. Land purchased by the
State at a delinquent sale cannot be redeemed after one year
from the sale, except pending a school commissioner's sale as
provided in Code 1931, 37-3-29. *McGraw* v. *Rohrbough*, 74
W. Va. 285, 82 S. E. 217; *State* v. *Board*, 111 W. Va. 562, 163
S. E. 57; Code 1931, 11-10-30. If such property is not re-
deemed, becomes irredeemable (expiration of one year after
sheriff's sale), and is sold by the State for the benefit of the
school fund, the purchaser, when he shall have paid the pur-
chase money, is entitled to receive from the commissioner of
school lands, or other commissioner making sale, a deed con-
veying to him ''all the right, title and interest of the State
of West Virginia, in and to the real estate thereby conveyed,
which passed to and vested in the State, under the Constitu-
tion and laws thereof, by reason of the forfeiture of such real
estate, or otherwise, which remained in the State at the time
of the decree for the sale thereof * * *.'' Code 1931, 37-3-27.
The cases of course apply these provisions of statutory law as
written. *Summers* v. *County of Kanawha*, 26 W. Va. 159;
*McGhee* v. *Sampselle, supra; State* v. *Lumber Company*, 64
W. Va. 673, 695, 63 S. E. 372.

There is no privity between a tax sale purchaser and the
former owner. Such purchaser acquires a new title. Thus,
in *State* v. *Harman*, 57 W. Va. 447, 50 S. E. 828, 829, syllabus
7: ''The title of the purchaser at a tax sale is not the same
as that of the owner in whose name the land was sold. They
are separate, hostile claims, with no privity between them.''
Statement of that rule also appears in *State* v. *Mathews*, 68
W. Va. 89, 69 S. E. 644, and *Mylius* v. *Raine-Andrew Lumber*

*Company*, 69 W. Va. 346, 71 S. E. 404. But this rule which makes a new and hostile title of that which comes from the State under a sale based on forfeiture must be considered in the light of the above statutory provisions which limit such title to that against which the assessment was made and the taxes laid. The new and hostile title which a purchaser acquires from the State under a forfeiture sale is not an unqualified fee simple carrying everything from the surface to the center of the earth, it is merely a new title for the estate which was vested in the former owner for whose tax delinquency the property was proceeded against by the State. These postulates are, of course, based on the assumption that the State had no other title than that which it acquired under the forfeiture. All the State's title, whatever it may be, passes to its grantee. True, such acquisition of title by the State and subsequent sale and conveyance thereof to a purchaser destroys all liens and encumbrances which existed against the property at the time of the delinquency. This is statutory. Code 1931, 11-10-22. The basis whereof is the superiority of the State's lien. It is paramount to all others.

Let us recur now to the chattels-real proposition. Does the assessment of the same and the payment of taxes thereon as required by statute, Code 1931, 11-5-2, have any effect, and possess any virtue, or is it a meaningless gesture? It is not to be expected that the State would make a mockery of a solemn legislative mandate. The State not only requires a chattel real to be separately assessed, but, as above noted, directs that the value thereof be taken into account so that such chattel real and the remainder of the estate to which it applies shall, together, constitute the value of the whole estate. This gives definite entity to the chattel just as to the remainder. Each stands independent of the other. Each is liable for the taxes assessed against it, and neither should be liable for the taxes assessed against the other.

A state government exists for the benefit and protection of the lives and property of its citizens. When a citizen meets the requirements of the state by respecting and obeying its laws, he would be shocked to discover that the protection which he had a right to expect would be given him is denied. Imagine the State protecting all classes of property except

chattels real! Real estate regularly assessed, and taxes paid, is immune from forfeiture. Also as against personal property, both tangible and intangible, when taxes thereon are paid, the State makes no claim, unless, forsooth, against chattels real as contended herein. For what reason should chattels real be placed in a class by themselves and discriminated against? In our opinion there is no reason.

As above shown, separate estates in coal, oil, gas, limestone, or other mineral or timber, when properly assessed and taxes thereon paid, are not destroyed by a forfeiture sale of the surface of the land to which they apply. The statute (Code 1931, 11-4-6) which provides for the separate assessment and taxation of such severally owned portions of the real estate protects them. On the same principle of justice and by the same measure of right, chattels real are protected by the statute which requires their separate assessment and taxation. When the State has required a chattel real to be assessed and subjected to taxes, paid by the owner, the State is estopped from selling such chattel for the payment of taxes assessed against the land.

Therefore, we are of opinion that the learned chancellor erred in sustaining the demurrer to the Cambridge Gas Company's answer. We reverse the decree sustaining the said demurrer and remand the cause for further proceedings not at variance with the principles enunciated in this opinion.

*Reversed and remanded.*