STATE OF WEST VIRGINIA

*v.*

THE FARMERS COAL COMPANY, *et al.*

(No. 9909)

Submitted January 8, 1947. Decided January 28, 1947.

2

Ira J. Partlow, Attorney General, Kenneth E. Hines, Assistant Attorney General, and Van B. Hall, for appellant.

Jackson, Kelly, Morrison & Moxley, amicus curiae on behalf of West Virginia Coal Association.

Fox, PRESIDENT:

This is a suit in equity, instituted in the Circuit Court of Braxton County by the State of West Virginia, under the provisions of Chapter 117, Acts of the Legislature, 1941, as amended by Chapter 140, Acts of the Legislature, 1945, to sell twenty-four tracts of coal land situate in said county, duly entered upon the land books for the year 1926 in the name of defendant, The Farmers Coal Company, taxes assessed thereon, and returned delinquent for the non-payment thereof, and on December 4, 1928, sold by the sheriff of said county, purchased by the State of West Virginia, and not redeemed within one year from the date of said sale, or at any other time. Plaintiff filed its bill praying that the said lands be sold for the benefit of the school fund, and that all steps necessary to effect such sale be taken. From an order entered in said cause on October 5, 1946, it appears that counsel for the State moved the court to find the lands proceeded against liable for sale for the benefit of the school fund, and to enter an order of reference, to the end that the land aforesaid be sold as prayed for in the bill, and that the cause then was submitted to the court for its decision. It appears further that the court, having maturely considered said cause and motion, was of the opinion that, "All tracts of land mentioned in the bill and proceeded against therein, were lands sold as

delinquent and purchased by the State at the Sheriff's sales for delinquent lands, and being further of the opinion that no tract or lot of land or realty mentioned and proceeded against in said bill is either eligible or qualified for sale in the course of the proceeding for the benefit of the school fund, for reasons set out in the written opinion of the court filed hereby in the cause and made a part of the record thereof, doth overrule said motion, and accordingly find that such lands and real estate proposed to be sold is not eligible or qualified as a basis for the relief prayed for in the bill, in any event * * *." The plaintiff not desiring to amend its bill, the same was dismissed. From said order of dismissal we granted this appeal.

According to the written opinion of the trial court, filed with and made a part of the record, two grounds were relied upon as justifying the decree of dismissal. One of said grounds bears upon the validity of the delinquent list and, in particular, the oath of the sheriff thereto, prescribed by Section 11 of Article 2, Chapter 117, Acts of the Legislature, 1941; but inasmuch as the land sought to be sold in this suit was returned delinquent for the nonpayment of taxes for the year 1926, the question raised as to the sheriff's oath to a delinquent list, provided for in the Act of 1941, aforesaid, can have no materiality in the present suit; and for that reason cannot be made a point of decision herein.

The second and controlling ground for the court's ruling is that under Section 4, Article XIII of the Constitution, before a suit can be instituted by the State in a circuit court to sell lands, the title to which is vested in it through forfeiture, or through purchase at a sheriff's sale, the title of the State thereto must be absolute; and that, as to purchased lands, the same must have become irredeemable. In the opinion of the trial court, construing the provisions of Chapter 117, Acts of the Legislature, 1941, the lands sought to be sold in this suit have not become irredeemable, and are not, therefore, eligible for, or subject to, sale for the benefit of the school fund.

4

Section 4 of Article XIII of the Constitution of this State reads: "All lands in this State, waste and unappropriated, or heretofore or hereafter for any cause forfeited, or treated as forfeited, or escheated to the State of Virginia, or this State, or purchased by either and become irredeemable, not redeemed, released, transferred or otherwise disposed of, the title whereto shall remain in this State till such sale as is hereinafter mentioned be made, shall by proceedings in the circuit court of the county in which the lands, or a part thereof, are situated, be sold to the highest bidder." Section 4 of Article XII of the same Constitution provides that: "The existing permanent and invested school fund, and all money accruing to this State from forfeited, delinquent, waste and unappropriated lands; and from lands heretofore sold for taxes and purchased by the State of Virginia, if hereafter redeemed or sold to others than this State; * * * shall be set apart as a separate fund, to be called the 'School Fund', and invested under such regulations as may be prescribed by law, in the interest-bearing securities of the United States, or of this State, * * *: *Provided,* That all taxes which shall be received by the State upon delinquent lands, except the taxes due to the State thereon, shall be refunded to the county or district by or for which the same were levied." It is under these two provisions of our Constitution that the Legislature has from time to time directed the sale of lands, title to which is in the State, for the benefit of the school fund.

Article 10 of Chapter 11 of the Code, covered the statutes relating to the sale of real estate for taxes as they stood before the enactment of Chapter 117, Acts of the Legislature, 1941, and as they existed at the time of the sale of the lands involved in this suit. Article 10 of Chapter 11, provided for the sale of delinquent lands by the sheriffs of the several counties, and Section 30 of said article made special provision for the redemption of land sold by such sheriff and purchased by the State. This statute provided that the previous owner of any real estate so sold and purchased by the State, his heirs or assigns, or

any person having the right to charge it for a debt might, within one year from the sale thereof "redeem the same by paying into the state treasury the amount of all state, state school, county, school district, independent school district and other district taxes, and all municipal corporation taxes, with the interest due on each class of taxes at the time of such purchase, including such taxes as were or should have been assessed thereon for the year in which the same was sold and the cost of publication of such real estate in the delinquent list, together with such additional sums as would have accrued thereon for all of such taxes if the same had not been purchased for the State, with interest thereon at the rate of twelve per cent per annum from the twentieth day of January in the year following that in which the same would have accrued." After the expiration of the one-year period provided for, as stated above, the land became irredeemable, and absolute title thereto became vested in the State. In *State v. Board,* 111 W. Va. 562, 163 S. E. 57, this Court held: "A tract of land, delinquent for nonpayment of taxes and purchased by the State at sheriff's sale, becomes irredeemable within the meaning of Constitution of West Virginia, Article XIII, Sec. 3, at the expiration of the one-year period allowed for redemption by Code 1931, 11-10-30." The same rule necessarily applies to Section 4 of Article XIII. See also *McGraw* v. *Rohrbough,* 74 W. Va. 285, 82 S. E. 217; *Morgan* v. *Pool,* 76 W. Va. 534, 85 S. E. 724; *State* v. *Coal Co.,* 113 W. Va. 872, 169 S. E. 614; *Early* v. *Berry,* 115 W. Va. 105, 175 S. E. 331. Thereafter, the former owner had no interest in the land, though Section 5 of Article XIII of the Constitution gave him the right to the surplus from the sale of his land after payment of taxes and costs; but this has been consistently held not to give the former owner any right or interest in the land as such. This was held in *McClure* v. *Maitland,* 24 W. Va. 561. Therefore, not having redeemed his land within the year given him by the statute, he lost all right or claim thereto. We think this was settled law prior to the enactment of Chapter 117, Acts of the Legislature, 1941. We think, too, that it was fully recognized by this Court, as

its decisions will attest, that before a suit could be instituted in the circuit court by the State to sell lands for the benefit of the school fund, the title of the State to the lands sought to be sold must be absolute and free and clear of all rights of redemption in the former owner. *State* v. *Collins,* 48 W. Va. 64, 35 S. E. 840; *State* v. *Jackson,* 56 W. Va. 558, 49 S. E. 465; *State* v. *Harman,* 57 W. Va. 447, 50 S. E. 828.

A distinction has been recognized between land purchased by the State at a sheriff's sale, and not redeemed, and lands forfeited to the State. As to lands forfeited, the forfeiture was automatic and absolute, and became effective upon the happening of a certain event which operated to work such forfeiture. No action to declare a forfeiture was necessary. The right of the Legislature to authorize the redemption or release of forfeited lands rests in the power given the Legislature by Section 39 of Article VI of the Constitution, which provides that: "The Legislature shall not pass local or special laws in any of the following enumerated cases, that is to say, "For * * * releasing title to forfeited lands. The Legislature shall provide by general laws for the foregoing and all other cases for which provision can be so made; * * *." *Waggoner* v. *Wolf,* 28 W. Va. 820. In the *Waggoner* case, Judge Snyder said: "There is a vast difference between delinquency and forfeiture. The former means simply that the owner has failed to pay the taxes due on his land, and in consequence it has been returned delinquent and is subject to the State's lien for the taxes and liable to be sold therefor. But by forfeiture the former owner is entirely divested of all his interest in the land and the title thereto becomes absolutely vested in the State. By reason of the delinquency the State may sell the land under her lien for taxes, while a forfeiture vests the absolute title in the State." In truth, forfeited lands never became irredeemable, for the Constitution required the Legislature to provide for their release from forfeiture.

Under the law as it existed prior to the enactment of Chapter 117, Acts of the Legislature, 1941, the sale of land

for the benefit of the school fund was provided for by Article 3 of Chapter 37 of the Code. By Section 5 of Article 3, a record of all real estate forfeited for any cause, or purchased for the State at a sale for taxes, and not redeemed or released according to law, was required to be kept by the auditor; and as to forfeited lands was required to be certified to the commissioner of school lands within sixty days from the date he received information thereof from county clerks, and lands purchased by the State at a sheriff's sale for taxes were required to be certified by the auditor to the commissioner of school lands, immediately after the expiration of twelve months from the date of purchase. Then it was made the duty of the commissioner of school lands to institute proper proceedings for the sale of the lands included in the auditor's certificates. By Section 29 of Article 3, it was provided that the former owner, his heirs, devisees or assigns of any real estate forfeited for any cause, to the State of West Virginia, might at any time during the pendency of the suit for the sale thereof, and before decree of confirmation of such sale, and for any reason which would entitle him to the excess of sale provided by the preceding section, be entitled to redeem such lands by the payment of taxes and costs, subject, however, to the right of persons who were at that time entitled to the benefit of the transfer provisions of Section 3 of Article XIII of the Constitution. It will be noted that under no statute has the right to redeem ever been recognized outside of a suit instituted to sell the land for the benefit of the school fund. That is true even as to forfeited lands, for, while the Legislature might have made other provisions for the redemption of forfeited lands, it has chosen to confine the exercise of that right to a redemption in a suit pending for the sale of the lands involved. Clearly, as to lands purchased by the State at a sheriff's sale, and after the one-year redemption period has expired, there could not, prior to the institution of a suit to sell the same for the benefit of the school fund, be any redemption of the land, and the title thereto was absolutely vested in the State.

The Legislature at its 1941 session enacted a comprehensive statute, designated as Chapter 11-A of the Code, made up of Articles 1 to 4, inclusive, and specifically repealing Articles 9 and 10 of Chapter 11; and Article 3 of Chapter 37 of the Code. Article 1 of Chapter 117, aforesaid, deals with the accrual and collection of taxes; Article 2 deals with delinquency and the method of enforcing payment; Article 3 deals with the sale of land for taxes; and Article 4 deals with the sale of land for the school fund. Article 3, dealing with the sale of land for taxes, provides for such sale by the sheriff of the county. By Section 6 of said article, it is provided that, "If no person present bids the amount of taxes, interest and charges due on any real estate offered for sale, the sheriff shall purchase it on behalf of the State for the amount due." Section 7 provides that: "Upon such purchase by the State, title to the real estate sold shall without any deed be vested in the State, subject, however, to the right of redemption provided for in the following section." Section 8 raises the crucial question presented in this suit, and reads: "The former owner of any real estate purchased by the state or forfeited to the state for nonentry, or any other person who was entitled to pay the taxes thereon, may redeem at any time until such real estate has been sold as provided in article four of this chapter, and the sale confirmed by the circuit court. * * *." The section then goes on to provide what taxes and fees must be paid to effect such redemption. It will be seen that the right of redemption is not confined to the period of one year, as it existed under former statutes, nor to any designated and fixed period, prior to the institution of a suit to sell the land for the benefit of the school fund, but it was extended beyond the date when the suit provided for in Article 4 referred to in said statute could be instituted, Article 4 being the statute governing the institution of a suit to sell lands for the benefit of the school fund, and extended to the date of confirmation of any sale which might be made therein. When we turn to Article 4 we find that this right to redeem is not only preserved, as provided for in Article 3, but, in cases where the former owner, or any

person who would have been entitled thereto, had not received notice of the proceeding, or did not have actual knowledge thereof, he could petition for such redemption within one year from the date when the sale of land in such suit had been confirmed.

In view of the broad provisions of Section 8 of Article 3 of the 1941 statute, we cannot say that lands sold by the sheriff and purchased by the State ever become irredeemable until there has been a confirmation of the sale thereof in a suit instituted to sell the same for the benefit of the school fund; and in some cases not until the expiration of one year following such confirmation. If this be true, and we can give the statute no other construction, we are unable to see how the Circuit Court of Braxton County could be required to entertain a suit to sell lands to which, under said statute, the State did not have the absolute title, for the reason that there was attached to the State's title the right of the former owner to redeem at any time after the sheriff's sale through which the State had presumably obtained its title.

Of course, the Legislature is bound by the Constitution. In *Webb* v. *Ritter*, 60 W. Va. 193, 54 S. E. 484, we held: "Since, by the constitution of this State, the subjects of land titles and taxation are united to some extent, in one scheme or plan, set forth in Article XIII of the constitution, all statutes, relating to either and affecting the subject matter of the provisions of said article, must be interpreted and construed in the light thereof and made to harmonize with, and conform to, said constitutional plan."

The plan for the sale of lands acquired by the State through forfeiture, or which the State has purchased at a sheriff's sale, and become irredeemable, is set up in Section 4 of Article XIII of the Constitution, and the Legislature may not depart therefrom. In reading that section it will be noted that the lands purchased by the State at a sheriff's sale are in a sense separated from forfeited lands. As to forfeited lands, the right of redemption is impliedly assured by the provisions of Section 39 of Article VI of

the Constitution quoted above; but not so as to purchased lands; the phrase covering purchased lands in the section is "or purchased by either and become irredeemable," the word "either" referring to the State of Virginia or this State. Then follows the language "not redeemed, released, transferred or otherwise disposed of," which we think, refers to forfeited land, and not to land purchased by the State and which had become irredeemable. Then, note this significant language: "The title whereto shall remain in this state till such sale as is hereinafter mentioned, be made." That language can only mean that the State must have absolute title. Then follows the provision that, having such title, there shall be a proceeding in the circuit court of the county in which the land, or any part thereof, is situated, to sell the same to the highest bidder. To us it is perfectly clear that before the State has the right to maintain the suit authorized by Section 4 of Article XIII, it must have absolute title to the land sought to be sold, and this means that as to lands delinquent and purchased by the State at a sheriff's sale there cannot exist at the date of the institution of such suit, any right of redemption in the former owner.

That the title of the State must be absolute, and free of any right of redemption on the part of the former owner, before a suit may be instituted in the name of the State to sell land for the benefit of the school fund, is manifest from the decisions of this Court on statutes which have permitted redemption of lands during the pendency of such suits. Immediately after the adoption of the Constitution, the Legislature by Chapter 134, Acts of the Legislature, 1872-3, and Section 13 thereof, provided that "* * * At any time before the sale of any such land as hereinbefore mentioned, such former owner or any creditor of such former owner of such land, having a lien thereon, may pay into court by and with the consent of the court, all costs, taxes and interest due at the time, as provided for in section twelve of this chapter, and have an order made in the order book of such court describing the amount paid in as well as the character of his claim to

said land, which order so made shall operate as a release of all former taxes on said land, and no sale thereof shall be made: Provided, that such payment shall in no way affect or impair the title to any portion of such land transferred to and vested in any person, as provided in section three of article thirteen of the Constitution." This same provision, with slight modifications, not affecting the substance thereof, was carried in Section 14 of Chapter 95, Acts of the Legislature, 1882, as well as in Chapter 17, Acts of the Legislature, 1887. Section 17 of Chapter 94, Acts of the Legislature, 1891, contains this provision: "The former owner of any real estate forfeited for any cause to the State of West Virginia, his heirs, personal representatives or assigns, may at any time during the pendency of the suit and before a decree confirming the sale thereof has been made and entered by the court, file his petition therein, in manner and form as prescribed in the next preceding section in relation to the excess of the proceeds of such sale, praying to be allowed to redeem so much of said real estate as to which the title still remains in the state, etc. * * *." It will be observed that this section limits the right to redeem during the pendency of a suit to sell real estate, for the benefit of the school fund, to land "forfeited for any cause to the State of West Virginia." What was intended by the change we do not know. It may be that the word "forfeited" was intended to embrace the result following the failure of the former owner to redeem his land from a sheriff's sale within the time prescribed by law. This provision appears in Section 29, Article 3, Chapter 37, of the Code of 1931, which Article 3 was repealed by Chapter 117, Acts of the Legislature, 1941. This change in the statute raises a question as to whether land sold by a sheriff and purchased by the State and not redeemed within one year, and which has become irredeemable, could, under Code, 37-3-29, be redeemed. We think, however, that this question has been answered by the decisions of this Court which hold, in effect, that lands sold by the sheriff and purchased by the State, and not redeemed within one year, become irredeemable; but that after the institution of a suit to sell such lands for

the benefit of the school fund, the privilege, not the right, of redemption is provided for. In *McGraw* v. *Rohrbough, supra,* a case where there had been a delinquency and a sheriff's sale, it was stated: "* * * The right of redemption from the State expired in one year from the sale, but again arose on the institution of proceedings by the commissioner of school lands to sell it. Section 17, Chapter 105, Serial Section 4449, Code 1913, makes provision for the redemption pending that proceeding. These are the only times given for redeeming title acquired by the State, whether it acquires it by forfeiture or delinquent tax purchase." In *State* v. *Board, supra,* this right of redemption is recognized; and in *State* v. *Coal Co., supra,* it is stated: "Land purchased by the State at a delinquent sale cannot be redeemed after one year from the sale, except pending a school commissioner's sale, as provided in Code 1931, 37-3-29."

This privilege of redemption during suit is held in many cases to be a mere act of grace on the part of the State. *McClure* v. *Maitland, supra; State* v. *King,* 64 W. Va. 546, 63 S. E. 468; *State* v. *Mathews,* 68 W. Va. 89, 69 S. E. 644; *Lawson* v. *Pocahontas Coal Land Co.,* 73 W. Va. 296, 81 S. E. 583; *Armstrong Products Corporation* v. *Martin,* 119 W. Va. 50, 192 S. E. 125; *Bank of Quinwood* v. *Becker,* 119 W. Va. 534, 194 S. E. 849. If the privilege of redemption during the pendency of a suit to sell land for the benefit of the school fund, is based upon a mere act of grace on the part of the State, which it can extend or refuse, it follows that the State's title to the land with respect to which such act of grace is exercised must be absolute; for, should the State elect not to extend the privilege, or to withdraw the same, the former owner cannot complain. Neither the former owner's right to surplus, nor the privilege extended to him as a matter of grace to redeem the lands during the pendency of such suit has any effect whatever upon the irredeemable status of the land proceeded against, where that land has been sold by the sheriff, purchased by the State, and not redeemed within one year from the sale thereof.

That absolute title in the State is a prerequisite to the institution of a suit to sell land for the benefit of the school fund, is further attested by the plain provision of Section 4, Article XIII of the Constitution which requires that the "title whereto shall remain in the State until such sale as is hereinafter mentioned, be made." In our opinion, the title referred to in the language quoted above means absolute title, and there is no absolute title in the State, so long as any person has the right to reclaim that title through the process of redemption. Furthermore, in a suit to sell land for the benefit of the school fund, it is assumed that the purchaser obtains title to the land he purchases, and not a mere claim thereto, subject to someone's right to redeem, where he has not been served with notice of the proceeding to sell, and has not actual notice thereof. To hold that the State may institute such a suit before absolute title becomes vested in it, as to lands sought to be sold, is to open the door to interminable confusion, resulting in the unsettling of land titles, and a state of uncertainty which, in our opinion, was never intended by the Legislature, and certainly not intended by the framers of our Constitution.

We are of the opinion that as to lands sold by the sheriff, purchased by the State, and not redeemed, before the State may institute a suit to sell the same for the benefit of the school fund, it must have absolute title thereto, free and clear of any right of redemption on the part of the former owner; that such absolute title does not exist, so long as the former owner has an unrestricted right to redeem such land sold by the sheriff at any time after such sale, both before and after the institution of a suit to sell the same for the benefit of the school fund; that there must be some time when the land proceeded against has become irredeemable, and that time is when the land has not been redeemed within a period definitely fixed by the Legislature for such redemption. Whether that date be one year or two years, or other period, after the sheriff's sale, is a question for legislative determination, but some period for redemption must be allowed, the end of which

must be fixed and definite, and following the expiration thereof the land becomes irredeemable. The Constitution refers to lands purchased by the State as "irredeemable," from which it necessarily follows that it was at some time subject to redemption after the State's purchase. If later, and after the institution of a suit to sell the same for the benefit of the school fund, the State elects, as a matter of grace, and without affecting the irredeemable status of the land involved, or its absolute title thereto, to permit redemption during suit, long practice and the decisions of this Court would seem to justify such a procedure. We repeat: To justify a circuit court in entertaining a suit by the State to sell land for the benefit of the school fund, that land must have become irredeemable; and whether it has become irredeemable can only be determined by enactment by the Legislature of a law which fixes a final date for the redemption of land sold at a sheriff's sale, and which provides that after the passing of the date or period so fixed for redemption, it becomes irredeemable and subject to sale.

Giving to the various statutes which permit redemption of land their broadest application, in favor of the taxpayer, the coal lands involved in this proceeding have never become, and, under the provisions of Section 8 of Article 3, Acts of the Legislature, 1941, are not now, irredeemable. Therefore, the Circuit Court of Braxton County correctly refused to entertain a suit for the sale of such lands for the benefit of the school fund.

Several questions have been raised, affecting the delinquency and sale of real estate, and the sale thereof for the benefit of the school fund, which are not necessary to a decision of this case, but which, on account of their importance, justify a brief comment.

The first of these questions is that raised in the opinion of the trial court, in which it holds as illegal the returning of real estate delinquent, without a diligent effort to resort to the personal property of the owner for the taxes assessed against such real estate. We have read the very

interesting and instructive discussion of the trial court upon the general policy of the law, covering a period of more than seven hundred years, to make personalty the primary fund for payment of debts and taxes, to the end that the ownership of land may be preserved and protected to the widest extent possible. We do not question this policy, although it has been somewhat relaxed in modern times. The right of the owner of land to pledge it for debt by contract is universally recognized. Taxes are by statute made a lien upon real estate, and it is made the duty of the owner of real estate to return it for assessment, and to pay the taxes assessed thereon. When he fails to perform that duty, he becomes a delinquent, which gives rise to the right of the State, for itself and its subdivisions, to enforce said lien by sale of the land, the first step in such enforcement being a declaration of delinquency, even though the right to resort to personal property for such taxes still exists. Land is, under our law, made liable for the debts of the owner, although as to landowners who die intestate personal property must be first applied to existing indebtedness to the relief of the real estate; and ordinarily suits may not be instituted to sell lands for the benefit of creditors until there has been a return of execution "No property found." However, this requirement does not exist beyond two years from the date of a judgment, and after that time the lien of the judgment may be asserted against real estate without the issuance of an execution.

The wisdom of what the Legislature did in enacting Section 11, Article 2, Chapter 117, Acts of the Legislature, 1941, cannot be considered by this Court. The question involved is one of legislative power. It may be that a strict application of the common law would sustain the trial court's position on this question; but, unless restricted by the Constitution, the Legislature may change the common law at any time it sees fit. Section 21, Article VIII of our Constitution provides: "Such parts of the common law, and of the laws of this State as are in force when this article goes into operation, and are not repug-

nant thereto, shall be and continue the law of the State until altered or repealed by the Legislature." We think the Legislature had the power to prescribe the form of the oath of the sheriff required to be affixed to a delinquent list so as to relieve the sheriff of being required to swear that he had used due diligence, without success, to find property within his county subject to levy for taxes.

Another question raised in the trial court's opinion, the answer to which is likewise not necessary to a decision of this case, is the alleged attempt to divert the fund derived from the sale of land for the benefit of the school fund. Section 35, Chapter 140, Acts of the Legislature, 1945, provides that: "If upon the sale of any forfeited or delinquent lands a surplus is realized over and above the total amount due on such land, the sheriff shall pay such surplus to the general receiver of the circuit court. The former owner of such land, his heirs or assigns, shall be entitled to the surplus upon application to the circuit court, if application is made within two years after the sale. If no application is made within two years the general receiver shall pay such surplus into the operating fund for the land department in the auditor's office." Section 4 of Article XII of the Constitution provides that what is termed the "School Fund" shall be made up of existing permanent and invested school funds, and all money accruing to this State from forfeited, delinquent, waste and unappropriated lands, and from lands heretofore sold for taxes and purchased by the State of Virginia if hereafter redeemed or sold to other than this State, with the provision that "all taxes which shall be received by the state upon delinquent lands, except the taxes due to the state thereon, shall be refunded to the county or district by or for which the same were levied." In practice, and as we think is authorized by this provision of the Constitution, moneys properly paid into the auditor's office in redemption of lands, which include taxes levied by counties, districts and municipalities have, from time to time, been refunded to such bodies, the effect of which would be that only surplus funds would go into the school fund.

We are at a loss to discern any reason or fundation for the legislative direction that any fund derived from the sale of delinquent or forfeited lands be paid into the operating fund of the land department of the auditor's office. Perhaps it was intended that being so paid into such operating fund, it should be then paid into the school fund as the Constitution seems to require; but that purpose, if intended, was not expressed in the enactment quoted above.

The decree of the Circuit Court of Braxton County entered on the 5th day of October, 1946, dismissing plaintiff's bill in this cause, is affirmed.

*Affirmed.*

KENNA, JUDGE, concurring:

To my mind the principal difficulty that arises in matters of this kind springs from the effort to reconcile the provision of Article XIII, Section 4 of our Constitution requiring that land purchased by the State at a sale for delinquent taxes must become irredeemable before sold by the State in a proceeding brought by it in the circuit court of the county in which the land or a part thereof is situated, for that purpose, and the provision of Section 5 of the same article granting the former owner the right to receive the excess of the sum for which the land may be sold above the aggregate of taxes, interest and costs. This Court formerly held that the right to the excess did not save to the former owner an interest in the land and for that reason he was not a necessary party to an administrative *ex parte* proceeding brought by the State for its sale. *McClure* v. *Maitland,* 24 W. Va. 561; *Auvil* v. *Iaeger,* 24 W. Va. 583. By Section 5, Chapter 95, Acts of 1882, the Legislature, however, provided that all claimants should be made parties to a proceeding of that nature by personal service or order of publication. Both the *Maitland* case and the *Iaeger* case, decided in 1884, were based upon proceedings brought respectively in 1879 and 1881, before the Act of 1882. *Neal* v. *Wilson,* 79 W. Va. 482, 92 S. E. 136; *Jenkins* v. *Kirby,* 90 W. Va. 436, 111 S. E. 307. So that the present situation is that the person in whose name the

land was sold for delinquent taxes, if still appearing of record as the owner of the paper title, shall be made a party to a judicial proceeding for its sale by the State pursuant to its purchase, and, further, is entitled under the Constitution to whatever the land brings at a public sale above the amount of taxes, interest and costs. This right exists under our Constitution concerning land that has become irredeemable, and yet for all practical purposes it amounts to the right to redeem. See *Totten* v. *Nighbert*, 41 W. Va. 800, 24 S. E. 627. True, the former owner cannot in proper person bid at the sale (Code, 11A-4-34) but his right to the excess eliminates competitive bidding if he, acting through another, wishes to do so. Except in his name, no other person has the right to pay the amount due on the land prior to sale. If the former owner, in the name of a third person, buys at the sale he is out of pocket exactly what would be required to redeem. Small wonder that our West Virginia cases have spoken of it continually as being a "redemption" made during the pendency of a suit brought against land supposedly become irredeemable. The only theory upon which this could soundly be done seems to be that the Constitution does not require more than that the land *become* irredeemable: not that it *remain* irredeemable. If that is the correct viewpoint, then it may be said that after one year has expired following the purchase by the State that the period for redemption has ended and the land has become irredeemable. It remains irredeemable until a proceeding is brought by the State in the proper circuit court in order to subject it to sale. During the intervening period there is no one provided by law to whom the taxes, penalties and interest can be paid so that the release of the land can be effected by the former owner.

Our cases attempt to distinguish between the right to redeem during the year following sale to the State, and the privilege given by the State as an act of grace to pay the State its money and have it surrender its claim to the land after a proceeding for its sale is brought. Perhaps the latter is an act of grace, but it is based upon the consti-

tutional provision that requires the State to pay to the former owner whatever it receives above the taxes, etc., due at the time of sale.

At the time of the *Maitland* case when the former owner was not entitled to receive notice of a proceeding brought by the State for the sale of land that it had purchased at a tax sale, it could be said that the land itself had become in fact irredeemable, but under present conditions the irredeemable period I believe has become only technical in order to satisfy the constitutional requirement to the effect that land must become irredeemable before sold by the State. It is true, as stated by Judge Fox, that after the one-year period of redemption has expired, title to the land it had purchased became absolutely vested in the State. It is true also that the State could not divest itself of the title thus gained except by a proceeding brought in the circuit court by the commissioner of school lands for that purpose, making the former owner a party, and that during that proceeding the former owner could, in effect, redeem, or, of course, if sale were ordered could indirectly bid at the sale, being entitled to the excess of the purchase money paid. Titles were frequently taken in the name of a friendly third person in order to clear the title of adverse claims, it being thought that he received the title of the State free from the claims of all persons as in an original senior grant.

The above observations are made in an effort to illustrate that it is the well established legislative policy to accord to the former owner or the person in whose name the delinquency occurred, in the event of sale to the State, every possible consideration, and yet to comply with the constitutional provision that before land purchased by the State can be sold by it, the land must become at least technically irredeemable. However, the irredeemable requirement of Section 4 of Article XIII cannot be totally ignored.